Clarence W. LOKEY, Appellant,

v.

The TEXAS METHODIST FOUNDATION et al., Appellees.

No. 11839.

Court of Civil Appeals of Texas, Austin.

June 16, 1971.

Rehearing Denied June 30, 1971.

McCullough, Ray, Trotti & Hemphill, Ross H. Hemphill, William A. French, III, G. David Carlock, Dallas, for appellant.

Clark, Thomas, Harris, Denius & Winters, Conrad Werkenthin, Mary Joe Carroll, Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Alfred Walker, Executive Asst. Atty. Gen., Joseph H. Sharpley, Z. T. Fortescue III, Asst. Attys. Gen., McGinnis, Lochridge & Kilgore, George D. Byfield, Shannon H. Ratliff, Austin, for appellees.

PHILLIPS, Chief Justice.

Clarence W. Lokey, the Plaintiff below, and hereinafter called Appellant, brought suit against the Texas Methodist Foundation, Appellee, in the 126th Judicial District Court of Travis County, Texas, on September 16, 1969. The Appellant's suit sought to remove the Appellee as trustee of two trusts established by the Appellant and known as the "K & L" and "K & L—A" trusts, and the Appellee duly answered and subsequently filed a Plea in Abatement. The National Division of the Board of Missions of the United Methodist Church, hereinafter known as the Intervenor, filed a Petition in Intervention on August 10, 1970, alleging that all monies raised by the Appellant while in its employ belonged to it and praying that the trusts in question be set aside and held for Intervenor's benefit. The Appellant answered the Petition in Intervention and filed a Plea in Abatement against the Intervenor. The trial court considered the pleadings on September 21, 1970, and granted Appellee's Plea in Abatement against the Appellant, denied the Appellant's Plea in Abatement against the Intervenor.

The Appellant then moved for a new trial and such motion was denied. The case before the Court is an appeal from the rulings against the Appellant by the trial court. No statement of facts was made below; although findings were requested and twice refused.

Inasmuch as we agree with the trial court that Appellee's Plea in Abatement is well taken we dismiss the appeal.

Appellant is before us on three points of error, however, inasmuch as we overrule his first, we need not discuss the remaining points. Appellant's first point of error, is the error of the trial court in sustaining Appellee's Plea in Abatement against Appellant since Appellant had standing under the Texas Trust Act and the Texas Uniform Declaratory Judgment Act.

We hold that the trial court properly sustained Appellee's Plea in Abatement inasmuch as Appellant had no standing to bring this cause of action with respect to the Charitable Trust in question.

The Appellant is an ordained Methodist minister who retired from the active pulpit in 1966. From 1948 until his retirement he was assigned to the Intervenor as the General Secretary of the Department of Spanish Speaking Work in the Southwest. During this period the Appellant and Bishop A. Frank Smith raised money that went into the "K & L" and "K & L—A" trusts which were established in 1964 with the Texas Methodist Foundation as trustee. The Appellant contends that the donors gave him money to spend as he and Methodist Bishop A. Frank Smith deemed best, provided it did not go to the Intervenor. It is the contention of the Intervenor, however, that the Appellant was obligated to account to it for all funds collected, and that the Appellant had no authority to establish the "K & L" and "K & L — A" trusts of $100,000 and $40,000, respectively.

While the Texas Methodist Foundation, Appellee, is the named Trustee of the Augustine Kern Lokey and Clarence Walters Lokey Trust dated January 8, 1970, ("K & L Trust"), the trust provides in Paragraph V:

"While the Texas Methodist Foundation is appointed herein as trustee for the purpose of investing the funds comprising the trust estate of this, the distribution of the funds shall be at the discretion of the following persons:

(a) Dr. C. W. Lokey, and such direct descendant of his as he may designate, either during his lifetime or in his will.

(b) Dr. Monroe Vivion, or, if he shall fail or refuse to serve or to continue to serve in the capacity appointed herein, then to his successor as Executive Director of the Texas Methodist Foundation; and

(c) One other person named by the above two. It is intended that the three persons who will function as described above shall pass on their offices in the manner indicated above. A majority of such persons shall be able to act on behalf of all and the Texas Methodist Foundation may rely upon the direction of any one of the above or his successor as appointed herein in making any distributions of trust assets."

Thus, Appellant maintains that he retained the power along with two other administrators to direct the distribution of the funds of the trust estate as well as the power to appoint his successor.

Paragraph IV of the K & L Trust is as follows:

"The primary purpose of this trust is the stabilizing and strengthening of the ministry of the Methodist Church with regard to people of Mexican, South American or Central American background so as to build good will and Christian citizenship among three groups and to strengthen international relationships. In addition, and in accordance with this primary purpose, the trust fund may be administered for needed support of retired preachers, their widows and dependent children, of the Rio Grande Conference of the Methodist Church who have labored in the ministry of Methodism to the groups of people for whom the primary purposes of the trust are devoted until such time that the Methodist Church is able to make reasonably adequate provision for the needs of this group.

Any funds not distributed among retired preachers, their widows and dependent children of the Rio Grande Conference of the Methodist Church shall be used to further the primary purposes of this trust by distributing such funds.

(1) for a chair of international studies at Southwestern University in Georgetown, Texas;

(2) for international scholarships and (3) for exchange international professorship,

all at Southwestern University in Georgetown, Texas, insofar as the income from the trust will provide. The three alternative uses of the trust as described herein shall be directed primarily to international relations with respect to Mexico, Central and South American countries and countries of the Caribbean area.

In making any distributions to retired preachers, their widows and dependent children, as called for herein, the administrators shall not be required to make distributions equally but shall make distributions on the basis of need, taking into account other sources of income which any retired preacher or his widow or dependent children might have, or as the administrators of this trust deem best to meet the needs and serve the purposes of this trust."

There is no question but that the trust before us is a charitable trust. Sec. 1, Article 4412a, Vernon's Ann.Civ.St. Appellant has filed this suit as a private citizen, not in any official capacity. He identifies himself as "settlor" but he does not claim personally to have contributed the funds; to the contrary, he asserts that the funds were accumulated from donations made by others.

■ At the outset, we overrule Appellant's contention that under the Texas Trust Act he is "a person affected by or having an active interest in the administration of the trust estate." Article 7425b–24E, V.A.C.S. There provisions with respect to bringing suit against a charitable trust are subject to the rules hereinafter set out.

Article 4412a, V.A.C.S., provides that the Attorney General shall be a necessary party in suits brought to terminate a char-

itable trust. As Appellant points out, this statute does not state that the Attorney General is the only party who can bring such a suit. Under the case law, however, one in Appellant's position cannot institute such a suit.

Article 4412a does not in any way limit the common law powers of the Attorney General in dealing with charitable trusts. In fact, the statute specifically provides that, "It is the purpose of this Article to resolve and clarify what is thought by some to be uncertainties existing at common law with respect to the subject matter hereof. Nothing contained herein, however, shall ever be construed, deemed or held to be in limitation of the common law powers and duties of the Attorney General."

The holding of the trial court that Appellant did not have standing is supported by two cases cited by Appellant, Coffee v. William Marsh Rice University, 403 S.W. 2d 340 (Tex.Sup.1966) and Carroll v. City of Beaumont, 18 S.W.2d 813 (Tex.Civ. App., Beaumont, 1929, writ ref.).

In Carroll v. City of Beaumont, supra, the Beaumont Temperance Hall Company conveyed certain real estate to the City of Beaumont in trust. Plaintiffs, as stockholders and members of the Beaumont Temperance Hall Company and as citizens and taxpayers of the City of Beaumont, brought suit against the City to cancel the conveyance. In holding that the Plaintiffs had no standing to bring the suit, the Court said:

"Appellants are not trustees charged with any duty relating to said trust, nor do they have any peculiar or individual rights, distinct from those of the public at large, in or to said property. That being true, it is well settled that they cannot maintain suit either to challenge the legality of the trust, the power of the city to act as trustee, or to enforce the execution of said trust, or to have an accounting as to same by appellees. The

subject-matter of the suit being a public charity, no final and conclusive settlement can be made, unless the state is represented, for public charities are public benefices and the state is interested in giving force and effect to them, and, for this to be done, the action must be brought by the Attorney General, either on his own motion or on the relation of any party legally concerned."

In *Rice*, Rice University brought suit for a construction of the trust instrument creating the University and for an application of the doctrine of cy pres to eliminate the requirements that the institution be only for white students and that no tuition be charged. Rice named the Attorney General as defendant and two groups intervened: (1) John Coffee, et al, alumni who opposed change, and (2) Bybee, et al, alumni who favored change. Rice won in the trial court and Coffee, et al, appealed to the Court of Civil Appeals, but the Attorney General did not appeal. The Court of Civil Appeals held that Coffee, et al, had no standing to appeal and the Supreme Court reversed, holding that Coffee, et al, did have standing. The Court made clear, however, that:

"The Attorney General and the intervenors Coffee et al. concede that to *initiate* any action to enforce or attack a trust, or to initiate any *cy pres* action, the suit may not be brought by third parties [such as intervenors Coffee et al.], and that such action must be brought or initiated by the Attorney General or by the trustees themselves."

The Court distinguished the case from Carroll v. City of Beaumont on the following grounds which also distinguish *Rice* from the case at bar.

1. In the *Carroll* case the right of Plaintiffs to bring the suit was challenged in the trial court by a plea in abatement. "No plea in abatement or other challenge was filed by Rice or anyone else to the intervention in the case at bar."

2. "The opinion (*Carroll*) says that only the Attorney General can bring an action to attack a public trust, with certain exceptions set out in the opinion. This point was conceded by the intervenors Coffee et al. at the outset. The policy behind the refusal to let others bring suit is to protect the trust and the trustees from harassment. Intervenors agree that they could not have instituted the suit. But the suit was instituted by Rice against the Attorney General, thus properly invoking the equity powers of the court."

3. "In the trust indenture before us, Mr. Rice reserved during his lifetime the power to direct and control the investments of the Endowment Fund 'and the management of said Institute.' Then Mr. Rice added a general power of visitation by the courts: 'Said Institute when chartered, and in operation, shall be subject to the visitation of any Courts of Justice * * * for the purpose of preventing and redressing any mismanagement, waste or breach of trust.'"

Thus it is clear that the *Rice* case supports Appellees' contention that Appellant did not have standing to bring this suit. In *Rice* there was no plea in abatement filed against the intervention, as there was in the instant case; it was conceded that only the Attorney General or the trustees could have instituted the suit; and the grantor reserved a general power of visitation in the courts.

Though Appellant recognizes the rule of the *Beaumont* case that a member of the public has no standing to attack a charitable trust, he seeks to bring himself under an exception to the rule stated by the Court in that case as follows: " * * * nor would the rule apply where the grantor or donor reserves some visitorial power or supervising authority in the instrument creating the trust, even when a public trust."

To begin with, Appellant was not the grantor or donor of the trust because he admittedly did not own the funds in question. Yet even if Appellant had been the grantor or donor of funds belonging to himself, nevertheless, he did not retain the kind of visitorial rights that would give him standing in a suit to cancel the trusts. As one single member of a three-man committee, Appellant could not even determine how the income was to be spent. And a majority of the committee had no dominion or control over the trust *res* which Appellant now seeks to divert from the trust and its purposes.

The *Rice* case involved so-called "visitorial rights," but such rights were very different from Appellant's limited rights as a member of the advisory committee.

In *Rice*, the Court discussed the subject of visitorial rights as follows:

"Finally, one of the exceptions stated by the Court of Civil Appeals in the *Carroll* case was that the rule (requiring the Attorney General to bring the suit) would not apply 'where the grantor or donor reserves some visitorial power or supervising authority in the instrument creating the trust, even when a public trust'. In the trust indenture before us, Mr. Rice reserved during his lifetime the power to direct and control the investments of the Endowment Fund 'and the management of the said Institute'. Then Mr. Rice added a general power of visitation by the courts: 'said Institute when chartered, and in operation, shall be subject to the visitation of any Courts of Justice which now are, or hereafter may be thereunto empowered, for the purpose of preventing and redressing any mismanagement, waste or breach of trust'. Thus Mr. Rice himself reserved, or attempted reserve, in the trust indenture the general equitable powers of the courts to inquire into any breach of trust or mismanagement. There is no sugges-

**950**

tion of any wrongdoing by any trustee; but it is the position of intervenors that the trustees have deviated, or desire to deviate, from the stated purpose of the trust indenture. Without here indicating any agreement or disagreement with intervenor's position on the merits, it is our opinion that the trust indenture did reserve the full power of the courts to 'visit' or inquire into the conduct of the trust, assuming that authority of the court is properly invoked." (403 S.W.2d 347)

Appellant did not, like Rice, reserve in the courts (or in himself) full power "to visit or inquire into the conduct of the trust." His minority membership on a committee having no control of the trust *res* does not carry with it power to cancel the trust itself.

■ In short, the *Rice* case held that those asserting an interest in the trust who had been permitted, without objection either by the trustees or the Attorney General, had as much standing to appeal as if they had been designated as defendants at the time the suit was filed. That holding cannot be converted into authority for the Appellant here to institute and prosecute a suit when his standing to do so has been opposed both by the trustee and by the Attorney General.

■ The Uniform Declaratory Judgment Act is a procedural device and does not confer jurisdiction where none existed. Cowan v. Cowan, 254 S.W.2d 862 (Tex. Civ.App., Amarillo, 1952, no writ); Phillips v. City of Odessa, 287 S.W.2d 518 (Tex.Civ.App., El Paso, 1956, writ ref. n. r. e.).

The appeal is dismissed.

Appeal dismissed.