GREENFIELD CONSTRUCTION COMPANY, INC v DEPARTMENT
OF STATE HIGHWAYS

Docket No. 56686. Argued June 8, 1976 (Calendar No. 1).—Decided
January 25, 1978. Rehearing denied *post,* p 962.

Greenfield Construction Co., Inc., brought an action in the Wayne
Circuit Court for review of a decision of the Department of
State Highways and for a declaratory judgment concerning a
contract to construct a sewer outlet into Lake St. Clair, which
rose above the level shown in the plans and above its historic
level. Plaintiff argued that it had petitioned the defendant for
additional compensation based on "changed physical condi-
tions" under the contract terms and that the department's
refusal by letter was an administrative ruling on the depart-
ment's standard specifications for highway construction which
was subject to judicial review under the Administrative Proce-
dures Act. The Wayne Circuit Court, Thomas Roumell, J.,
granted plaintiff a declaratory judgment but left the amount of
damages for negotiation by the parties or a decision by the
Court of Claims. The Court of Appeals, J. H. Gillis, P. J., and

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 29] 1 Am Jur 2d, Administrative Law § 166.
  2 Am Jur 2d, Administrative Law §§ 731, 732.
[1, 3] 17 Am Jur 2d, Contracts §§ 242, 458.
[1, 3, 8, 9, 11, 28, 29, 31, 32] 22 Am Jur 2d, Declaratory Judgments
  § 75.
[2, 12, 13] 2 Am Jur 2d, Administrative Law §§ 643, 731, 732.
[4–8, 31, 32] 2 Am Jur 2d, Administrative Law § 577.
  72 Am Jur 2d, States, Territories, and Dependencies § 99 *et seq.*
[5–10, 27] 72 Am Jur 2d, States, Territories, and Dependencies §§ 118,
  120, 122, 126.
[14] 1 Am Jur 2d, Administrative Law §§ 165, 166.
[15] 2 Am Jur 2d, Administrative Law § 277 *et seq.*
[16, 25] 2 Am Jur 2d, Administrative Law § 553 *et seq.*
[17] 2 Am Jur 2d, Administrative Law § 203.
[18] 1 Am Jur 2d, Administrative Law §§ 92 *et seq.,* 100 *et seq.*
  2 Am Jur 2d, Administrative Law § 289 *et seq.*
[19, 24] 2 Am Jur 2d, Administrative Law §§ 463–465.
[20–23, 30] 2 Am Jur 2d, Administrative Law §§ 279–284, 289 *et seq.*
[26] 2 Am Jur 2d, Administrative Law §§ 550–552.

Allen and Peterson, JJ., reversed on the ground that the circuit court lacked subject-matter jurisdiction over the dispute (Docket No. 18721). Plaintiff appeals. *Held:*

The decision of the Court of Appeals is affirmed by an equally divided Court.

Justice Ryan, joined by Justices Coleman and Fitzgerald, wrote to affirm:

1. The standard specifications for highway construction are routinely incorporated by reference in defendant's construction contracts not only to avoid the necessity of reproducing the highly detailed information in every contract, but also to enable prospective bidders to know in advance the bid requirements and construction specifications. No part of the standards has ever been promulgated as agency rules within the meaning of the Administrative Procedures Act. Therefore, the letter from the defendant refusing to allow the plaintiff additional compensation was not a declaratory ruling as to the validity or applicability of an administrative rule subject to judicial review.

2. The Court of Claims Act is the controlling legislation waiving the state's sovereign immunity from suit against it and its agencies, and submitting them to the jurisdiction of the courts. To the extent that any legislation enacted before the Court of Claims Act authorizes suit against the state exceeding the jurisdictional limitations imposed by the Court of Claims Act, the former legislation is superseded by and limited by the Court of Claims Act. Case law to the contrary is expressly overruled.

3. In sharply restricting the causes of action which may be brought against the state and in creating a new court of limited and exclusive jurisdiction solely for that purpose, the Legislature indicated with clarity that it was limiting its waiver of sovereign immunity from suit to the prosecution of claims within the Court of Claims. Therefore, the circuit court was without jurisdiction to entertain the plaintiff's suit for judicial review and declaratory judgment under the Administrative Procedures Act, or declaratory judgment under GCR 1963, 521.

Justice Coleman concurred with Justice Ryan that the specification is not an agency rule and that the circuit court did not have jurisdiction over the complaint, but she wrote separately to say:

1. There has been no showing that the highway department's use of standard specifications was an attempt to evade or circumvent the Administrative Procedures Act.

2. A procedure which would permit plaintiffs to institute parallel actions against the state—one in the circuit court, another in the Court of Claims—would be confusing and time consuming.

3. A finding that the specifications are agency rules would force all state agencies either to discard standard specifications or move to adopt them as rules under the Administrative Procedures Act. The former is inefficient, costly both in time and money. The latter is cumbersome and would subject the policy and contract decisions of state agencies to frequent circuit court review. It would significantly increase the caseload of an already overburdened circuit court.

4. The Court of Claims can provide the plaintiff a proper forum for a declaratory judgment on a contract dispute with a state department. The plaintiff should be permitted to file its claim in the Court of Claims even if the statute of limitations has run. The circuit court has assumed jurisdiction. The plaintiff had no reason to believe it was in the wrong forum. The statute of limitations was tolled while the trial and appellate disposition was made.

Justice Fitzgerald, also writing separately, concurred with Justice Ryan that the specifications are not "rules" within the meaning of the Administrative Procedures Act, that the circuit court erroneously asserted its jurisdiction in the instant case and that whether or not the Court of Claims has the power to issue a declaratory judgment is not an issue in this case. He also agreed with Justice Coleman that the plaintiff should be permitted to file its claim in the Court of Claims even if the statute of limitations has run.

Justice Levin, joined by Chief Justice Kavanagh, would remand to the circuit court for judicial review, under the Administrative Procedures Act, of the denial of the plaintiff's claims as a declaratory *ruling* of a state agency on the applicability of a departmental rule to an actual state of facts. He would hold, however, that the circuit court erred in granting a declaratory *judgment* against the highway department because the Court of Claims has exclusive jurisdiction, and that the Court of Claims has jurisdiction to render a declaratory judgment against a department of state government. The plaintiff therefore should not be precluded from seeking a declaratory judgment in the Court of Claims, subject to whatever limitations the doctrine of exhaustion of administrative remedies, res judicata and related principles may impose.

1. The standard contract provisions regarding claims for additional compensation for changed physical conditions create

a right and impose a duty—the substantive element of an administrative rule—to apply to the Department of State Highways, before commencement of the work, for the additional compensation, and they also establish a procedure by which the merits of the claim can be resolved. The Attorney General states that the contract provisions embody procedures used by the department to process claims for extra compensation. Therefore, the provisions at least concern "procedure and practice of the agency" and, on that basis alone, are within the definition of the term "rule" in the Administrative Procedures Act.

2. The Department of State Highways is a policy-making agency of state government, determining the design and manner of production, maintenance and operation of highways and ancillary facilities. The department's decisions of general applicability, implementing the law it administers, are "rules" wherever or however expressed. Disparities between anticipated and actual physical conditions occur with sufficient frequency so that the highway department has adopted policies and procedures regarding claims for changed physical conditions which are as binding on contractors as formal rules.

3. The broad general definition of "rule" in the Administrative Procedures Act with specific exceptions indicates that the definition is to be applied comprehensively; the omission of an exception for contracts such as is found in the Federal Administrative Procedures Act appears to have been deliberate and indicates that there is no general exception for law-implementing agency statements merely because they are in the form of standard contract provisions. The generality of the word "statement" used in the statutory definition of "rule" indicates that the form in which an agency pronouncement is made is without significance; it is not dispositive that the agency does not call its statement a rule. The standard contract provisions in the instant case provide a means of promptly resolving disputes with contractors which may otherwise impede timely completion of the work. They so closely relate to the primary function of the highway department that they are administrative rules, although incorporated as part of a contract. The Administrative Procedures Act provisions subjecting to judicial review declaratory rulings regarding the application of an agency rule to an actual state of facts cannot be avoided by stating agency policy, procedure and practice in the form of a standard contract provision.

4. While the Administrative Procedures Act provides that a rule is not valid unless promulgated in accordance with its

notice and comment provisions, that proscription merely bars an agency from attempting to enforce against a citizen a substantive or procedural expression, otherwise a rule, not so promulgated. It does not permit an agency to avoid altogether the operative effect of the act by the simple expedient of ignoring it and failing to promulgate such expressions in accordance with its provisions. The highway department's failure to promulgate expressions of agency policy, practice and procedure in accordance with the Administrative Procedures Act requirements does not preclude enforcement against the department.

5. The rule-making and declaratory ruling provisions of the Administrative Procedures Act seek to provide public participation in policy formulation and external review of administrative action to avoid discriminatory and unreasonable enforcement. The highway department promulgates its standard specifications with industry participation in a manner paralleling the requirements for rule making. The standard contract provisions were published, although not in the administrative code. The relevant public has been made aware of the policies and procedures followed by the highway department in deciding claims for additional compensation for changed physical conditions. It is of no importance that the highway department is not obliged to provide contractors claiming increased compensation for changed physical conditions an administrative remedy supplementing the common-law remedy. Having done so, the department cannot avoid the procedural safeguards designed to protect against discriminatory and unreasonable administration.

6. The asserted disparity between the water levels in the plans and those found upon commencement of construction is an actual state of fact. The final position of the director and the central office adjustment board are, despite the highway department's failure to obey the command of the Administrative Procedures Act to prescribe by rule the form for requesting and the procedure for submission, consideration, and disposition of a request for a declaratory ruling, in substance a declaratory ruling regarding the application of an agency rule to an actual state of facts. The right to judicial review does not depend on the agency's compliance with the Administrative Procedures Act or its labeling its decision as a declaratory ruling. The department's final position is, therefore, "subject to judicial review in the same manner as an agency final decision or order in a contested case".

7. The Court of Claims Act does not establish an "applicable

special statutory *review* proceeding" and therefore judicial review may be obtained in the circuit court. The Court of Claims Act establishes a procedure for commencement and adjudication of *original actions* against the state. The Court of Claims, a statutory court of limited jurisdiction, has no power of judicial *review* of administrative action. Judicial review of administrative action may be obtained only in the circuit court, the Court of Appeals, and the Supreme Court. Since the right to judicial review of a declaratory ruling under the Administrative Procedures Act does not depend on the adequacy of alternative remedies, a contractor's right to proceed in the Court of Claims does not preclude exercise of the right to judicial review.

8. The circuit court erred in rendering a declaratory judgment regarding the claim against the state, not because the state is immune from suit, but because the Legislature has determined that the circuit court is not the proper forum; the Court of Claims is the proper forum, because it has exclusive jurisdiction over claims or demands against the state, and is now empowered by statute and court rules to render declaratory judgments. It is not unusual to render, in the exercise of judicial discretion, declaratory judgments regarding the constitutionality and construction of state statutes in actions involving departments and agencies of state government. There is often as much need to determine in advance of breach or performance of a governmental contract the relative responsibilities of the parties as there is to make such a determination regarding a non-governmental contract or where there is no contract but enforcement of a statute is involved. A declaration of rights and obligations in advance of breach or performance does not enlarge the state's monetary exposure; it merely accelerates the determination of a "claim or demand ex contractu" to which the state has already submitted itself. The judgment rendered by the circuit court adjudicated a claim ex contractu against a department of state government and hence could only be entered by the Court of Claims.

The decision of the Court of Appeals vacating the declaratory judgment should be affirmed and the case remanded to the circuit court for review of the declaratory ruling of the Department of State Highways under the *Administrative Procedures Act.*

Justice Williams agreed with Justice Levin that the procedures to determine citizen rights published in the standard specifications for highway construction contracts were intended by the Legislature to be treated as rules under the Administra-

tive Procedures Act, entitling a citizen to the due process specified in that act, including a declaratory ruling and judicial review in the circuit court. He would remand the plaintiff's suit to the circuit court for further consideration under the Administrative Procedures Act, except that he would remand the plaintiff's request for an extension of contract time to the Department of State Highways for a due process hearing. He agreed with his colleagues that circuit court has no jurisdiction over a suit for a declaratory judgment against an agency of government. He did not agree with Justice Levin that the Court should hold that the Court of Claims has jurisdiction to issue a declaratory judgment against a state agency because that issue has both legal and administrative ramifications which deserve full adversary argument before the Court, and because he presently believes that the Legislature did not intend to remove governmental immunity from a suit in the nature of a declaratory judgment for four reasons: (1) a declaratory judgment does not exactly fit the definition of Court of Claims jurisdiction of claims for compensation; (2) the Legislature has specifically indicated in the Administrative Procedures Act that it intends such anticipatory action to be handled by due-process review in the administrative agency; (3) the Legislature's intention would be evaded if the aggrieved citizen were entitled to bring original suit for declaratory judgment in the Court of Claims, thereby bypassing the procedures under the Administrative Procedures Act with review in the circuit court; (4) the Legislature did not intend the courts to be bogged down with the details of administration, except on final review, by reviewing these matters *de novo* and making administrative decisions on a preponderance of the evidence, which is what the Court of Claims would be doing if it had jurisdiction of suits for declaratory judgment.

Justice Blair Moody, Jr., did not participate.

58 Mich App 49; 227 NW2d 223 (1975) affirmed.

### DECISION OF THE COURT

1. ADMINISTRATIVE LAW—HIGHWAYS—CONTRACTS—CIRCUIT COURT— DECLARATORY JUDGMENT—JURISDICTION.

A decision of the Court of Appeals that a circuit court lacked subject-matter jurisdiction in an action for declaratory judgment to review a decision of the Department of State Highways concerning the application of the department's standard highway contract provisions to a contractor's request for additional compensation based on "changed physical conditions" is affirmed by an equally divided Court.

OPINION FOR AFFIRMANCE BY RYAN, J.

COLEMAN and FITZGERALD, JJ.

2. ADMINISTRATIVE LAW—HIGHWAYS—SPECIFICATIONS—RULES—
   WORDS AND PHRASES.

   The standard specifications for highway construction published by
   the Department of State Highways is not a rule of the agency
   subject to judicial review or a declaratory judgment by a circuit
   court under the Administrative Procedures Act (MCL 24.263,
   24.264; MSA 3.560[163], 3.560[164]).

3. ADMINISTRATIVE LAW—CONTRACTS—CHANGED PHYSICAL CONDITIONS
   —DECLARATORY RULING—WORDS AND PHRASES.

   A letter from the Department of State Highways Central Office
   Adjustment Board refusing to allow additional compensation to
   a contractor for alleged changed physical conditions under the
   terms of a contract did not constitute a declaratory ruling as to
   the applicability of the department's rules subject to judicial
   review or a declaratory judgment under the Administrative
   Procedures Act (MCL 24.263, 24.264; MSA 3.560[163],
   3.560[164]).

4. STATES—SOVEREIGN IMMUNITY—STATUTES.

   A state cannot be sued without its consent, granted by a legisla-
   tive enactment which establishes a remedy by which a claim-
   ant may enforce a valid claim against the state and which
   subjects it to the jurisdiction of the court.

5. STATES—SOVEREIGN IMMUNITY—COURT OF CLAIMS.

   The Court of Claims Act is the controlling legislative expression
   of waiver of the state's sovereign immunity from direct action
   against it and its agencies and of their submission to the
   jurisdiction of the courts (MCL 600.6419; MSA 27A.6419).

6. STATES—SOVEREIGN IMMUNITY—COURT OF CLAIMS ACT.

   Legislation enacted before the Court of Claims Act, to the extent
   that its authorization of suit against the state may exceed the
   jurisdictional limitations imposed by the Court of Claims Act, is
   superseded and limited by the Court of Claims Act (MCL
   600.6419; MSA 27A.6419).

7. STATES—SOVEREIGN IMMUNITY—COURT OF CLAIMS ACT—EQUITY.

   A statutory relinquishment of common-law sovereign immunity
   from suit must be strictly construed; a cause of action under
   the Court of Claims Act must be of a nature and in a forum
   permitted by the statute (MCL 600.6419; MSA 27A.6419).

8. States—Sovereign Immunity—Declaratory Judgment—Circuit Courts—Jurisdiction.

 *A circuit court did not have subject-matter jurisdiction over a complaint for declaratory judgment against a state agency because the Legislature indicated with clarity in the Court of Claims Act, by restricting the causes of action which may be brought against the state and creating a new court of limited and exclusive jurisdiction solely for that purpose, that it was limiting its waiver of sovereign immunity from suit to the prosecution of claims within the Court of Claims (MCL 600.6419; MSA 27A.6419; GCR 1963, 521).*

Separate Opinion by Coleman, J.

See headnote 2.

9. States—Contracts—Court of Claims—Jurisdiction.

 *The Legislature has provided the Court of Claims as a forum with exclusive jurisdiction to resolve disputes between contractors and a state department (MCL 600.6419; MSA 27A.6419).*

10. States—Contracts—Declaratory Judgment—Court of Claims —Jurisdiction.

 *The Court of Claims is not prevented by statute from giving a declaratory judgment on a contract dispute with a state agency (MCL 600.6422, MSA 27A.6422; GCR 1963, 521).*

11. Limitation of Actions—States—Declaratory Judgment—Circuit Court—Court of Claims.

 *A plaintiff contractor should be permitted to file a claim in the Court of Claims against a state agency even if the statutory period to bring an action has run during trial and appellate disposition of a complaint where a circuit court had erroneously assumed jurisdiction over the complaint, and the plaintiff had no reason to believe that it was in the wrong forum.*

Separate Opinion by Fitzgerald, J.

See headnotes 2 and 11.

Separate Opinion by Levin, J.

Kavanagh, C. J.

12. Administrative Law—Highways—Specifications—Rules— Words and Phrases.

 *The standard highway contract provisions concerning claims for*

*additional compensation for changed physical conditions concern the "procedure or practice of the agency"; therefore, on that basis alone, the provisions are within the definition of the term "rule" in the Administrative Procedures Act (MCL 24.207; MSA 3.560[107]).*

13. ADMINISTRATIVE LAW—HIGHWAYS—RULES—WORDS AND PHRASES.

*The Department of State Highways is a policy making agency, determining the design and manner of production, maintenance and operation of highways and ancillary facilities; the department's substantive decisions of general applicability, implementing the law it administers, are "rules" within the meaning of the Administrative Procedures Act, however or wherever expressed (MCL 24.207; MSA 3.560[107]).*

14. ADMINISTRATIVE LAW—HIGHWAYS—SPECIFICATIONS—RULES—WORDS AND PHRASES.

*The policies and procedures adopted by the Department of State Highways in contract specifications regarding claims for changed physical conditions are as fully binding on contractors as formal administrative rules; they are a substantive statement of general applicability which implements law administered by the department (MCL 24.207; MSA 3.560[107]).*

15. ADMINISTRATIVE LAW—RULES—ADOPTION.

*It is the legislative judgment that when an agency of state government adopts substantive policies of general applicability that implement or apply law enforced or administered by it or establishes practice and procedure that the safeguards set forth in the Administrative Procedures Act are necessary for the protection of those affected by the agency's action (MCL 24.201 et seq.; MSA 3.560[101] et seq.).*

16. ADMINISTRATIVE LAW—RULES—ADOPTION—JUDICIAL REVIEW.

*The Legislature, in adopting the Administrative Procedures Act, and the people in providing for judicial review of certain state agency decisions, did not intend that the safeguards established for their protection could be readily avoided by ignoring the requirements for rule making and incorporating law-implementing decisions of general applicability in contracts with those who are affected by the agency's action (Const 1963, art 6, § 28; MCL 24.201 et seq.; MSA 3.560[101] et seq.).*

17. ADMINISTRATIVE LAW—RULES—GOVERNMENT CONTRACTS.

*The requirements of the Administrative Procedures Act do not apply to government contract provisions which are unrelated to the application or implementation of law enforced or adminis-*

*tered by the agency or which do not prescribe agency practice and procedure (MCL 24.201 et seq.; MSA 3.560[101] et seq.).*

18. ADMINISTRATIVE LAW—RULES—STATUTES—DELEGATION OF POWERS.

*Administrative rules have the effect of law because they are legislatively authorized expressions by the agency in the exercise of delegated power to apply or implement the law.*

19. ADMINISTRATIVE LAW—RULES—GOVERNMENT CONTRACTS.

*The provisions of the Administrative Procedures Act subjecting to judicial review declaratory rulings regarding the application of an agency rule to an actual state of facts cannot be avoided by stating an agency's substantive policy or its procedure and practice in the form of a standard contract provision (MCL 24.263; MSA 3.560[163]).*

20. ADMINISTRATIVE LAW—RULES—ADOPTION.

*The Administrative Procedures Act provides that an agency rule is not valid unless promulgated in accordance with its notice and comment provisions; however, that proscription merely bars an agency from attempting to enforce against a citizen a substantive or procedural expression, otherwise a rule, not so promulgated (MCL 24.243; MSA 3.560[143]).*

21. ADMINISTRATIVE LAW—HIGHWAYS—RULES—ADOPTION.

*Failure of the Department of State Highways to promulgate expressions of agency policy, practice, and procedure in accordance with the requirements of the Administrative Procedures Act does not preclude enforcement of such expressions against the department (MCL 24.201 et seq.; MSA 3.560[101] et seq.).*

22. ADMINISTRATIVE LAW—RULES—ADOPTION—LEGISLATIVE PURPOSE.

*The purpose of the Administrative Procedures Act rule making and declaratory ruling provisions is to provide public participation in policy formulation and external review of administrative action to avoid discriminatory and unreasonable enforcement (MCL 24.201 et seq.; MSA 3.560[101] et seq.).*

23. ADMINISTRATIVE LAW—RULES—ADOPTION—WORDS AND PHRASES.

*Statements by an administrative agency of substantive decisions of general applicability which implement law enforced or administered by the agency or of its procedure and practice are, unless within a specific exception to the term "rule" in the Administrative Procedures Act, binding on the agency although not promulgated in accordance with the requirements of the act (MCL 24.201 et seq.; MSA 3.560[101] et seq.).*

24. ADMINISTRATIVE LAW—HIGHWAYS—SPECIFICATIONS—JUDICIAL RE-
VIEW.

*The final position of the Department of State Highways on a
claim of a contractor for additional compensation for a sewer
because of an asserted disparity between the water levels in the
plans and those found upon commencement of construction is
in substance a declaratory ruling regarding the application to
an actual state of facts of an agency rule subject to judicial
review under the Administrative Procedures Act which does
not depend on the department's compliance with the act or its
labeling its decision a declaratory ruling (MCL 24.201 et seq.;
MSA 3.560[101] et seq.).*

25. ADMINISTRATIVE LAW—COURTS—JURISDICTION—JUDICIAL REVIEW.

*Judicial review of administrative action may be obtained only in
the circuit court, the Court of Appeals and the Supreme Court;
the Court of Claims Act establishes a procedure for commence-
ment and adjudication of original actions against the state and
the Court of Claims has no power of judicial review of adminis-
trative action (MCL 24.302, 24.303, 600.6419; MSA 3.560[202],
3.560[203], 27A.6419).*

26. ADMINISTRATIVE LAW—DECLARATORY RULING—JUDICIAL REVIEW.

*The right to judicial review of a declaratory ruling under the
Administrative Procedures Act does not depend on the ade-
quacy of alternative remedies; therefore a government contrac-
tor's right to proceed in the Court of Claims does not preclude
exercise of the statutory right to judicial review (MCL 24.302,
24.303; MSA 3.560[202], 3.560[203]).*

27. COURTS—COURT OF CLAIMS—GENERAL COURT RULES.

*The General Court Rules apply to the Court of Claims as well as
to the circuit courts, except as provided in the Court of Claims
Act (MCL 600.6422; MSA 27A.6422; Court of Claims R 4).*

28. JUDGMENT—DECLARATORY JUDGMENT—COURT OF CLAIMS.

*The Court of Claims is empowered to render a declaratory judg-
ment; a declaration of rights and obligations in advance of
breach or performance of a government contract does not
enlarge the state's monetary exposure; it merely accelerates
the determination of a "claim and demand ex contractu" to
which the state has already submitted itself (Const 1963, art 6,
§ 26; MCL 600.6419; MSA 27A.6419; GCR 1963, 521.1).*

29. ADMINISTRATIVE LAW—DECLARATORY JUDGMENT—JURISDICTION.

*An action for a declaratory judgment involving the state which
does not assert a claim or demand against the state may,*

*subject to other provisions of law, be brought in the circuit court; however, an action for a declaratory judgment asserting a claim or demand against the state is subject to the exclusive jurisdiction of the Court of Claims (MCL 600.6419; MSA 27A.6419; GCR 1963, 521.1).*

Separate Opinion by Williams, J.

30. Administrative Law—Highways—Specifications—Rules— Words and Phrases.

*The Legislature intended that procedures to determine citizen rights described in the standard specifications for highway construction contracts published by the Department of State Highways are to be treated as an agency rule under the Administrative Procedures Act entitling the citizen to specified due process, including a declaratory ruling and judicial review in the circuit court (MCL 24.207, 24.263, 24.264; MSA 3.560[107], 3.560[163], 3.560[164]).*

31. States—Sovereign Immunity—Declaratory Judgment—Juris- diction.

*A circuit court has no jurisdiction over a suit for a declaratory judgment by a citizen against an agency of government (GCR 1963, 521).*

32. States—Sovereign Immunity—Declaratory Judgment—Juris- diction.

*The Supreme Court should not hold that the Court of Claims has jurisdiction with respect to a declaratory judgment against a state agency where the issue has not been fully argued before the Court and it appears that the Legislature did not intend to remove governmental immunity from suit in the nature of a declaratory judgment (MCL 600.6419; MSA 27A.6419; GCR 1963, 521).*

*Schmier, Fealk & Ellis* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Curtis G. Beck,* Assistants Attorney General, for defendant.

Ryan, J. In October of 1972 defendant, Michigan Department of State Highways, advertised for bids

on the construction of sewer outlet structures which would extend 2000 feet into Lake St. Clair. Plaintiff, Greenfield Construction Company, obtained copies of the project proposal, design plans, and specifications, submitted the low bid on the project and ultimately entered into a construction contract with defendant in December, 1972.

Upon arrival at the site in March, 1973, Greenfield alleges it first discovered significant changes in the conditions at the work site from those indicated in the project proposal, design plans, and specifications. Specifically, the water level of Lake St. Clair was approximately 2 feet higher than the last elevation indicated in the project plans supplied by defendant.

Greenfield thereupon notified defendant that it considered these developments to be "changed physical conditions", as that expression is defined in the contract documents, and claimed that under the contract it was entitled to compensation in excess of the contract price.

In petitioning for extra compensation, Greenfield followed the informal procedures customarily employed in situations where there is disagreement between the highway department and contractors as to matters of performance or compensation.[1]

---

[1] A meeting of the parties' representatives was held at the highway department's Detroit office on April 4, 1973. On April 10, 1973 plaintiff was advised by letter that "the Lansing construction office, in conjunction with the Attorney General's Department, does not feel that a changed condition exists and will not consider additional compensation due to a change in the water level".

On April 24, 1973 Greenfield addressed a letter to the Director of the State Highway Department summarizing its position and requesting his "intervention" to arrange a meeting with Greenfield's representatives and the defendant's board of review.

A meeting was held on May 10, 1973 between representatives of Greenfield and the defendant department. Following receipt of the recommendation of the board, the director of defendant highway department, by letter dated June 6, 1973, advised Greenfield that its request was denied.

Ultimately, however, the Department of State Highways, in a letter dated June 6, 1973, advised plaintiff that the department would not award additional compensation. No record was made of the department proceedings which culminated in the June 6 letter.

On July 17, 1973, Greenfield filed its two-count complaint in the Wayne Circuit Court. Count I alleged that the June 6 letter from the Department of State Highways was a "declaratory ruling" subject to judicial review under the Administrative Procedures Act of 1969, MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.* Plaintiff sought a reversal of the alleged "declaratory ruling" and, in addition, a declaratory judgment that there had been a material change in conditions under the contract. Count II alleged that certain construction delays were not the fault of plaintiff and that plaintiff asserted entitlement to a declaratory judgment to that effect and for a determination that plaintiff was entitled to an extension of the contractual construction period without suffering liability for liquidated damages.

In response defendant filed a motion captioned "Motion for Accelerated or Summary Judgment". Defendant first asserted that the circuit court lacked subject matter jurisdiction because the matter complained of by plaintiff was not a "contested case" within the Administrative Procedures Act, and did not involve a "rule" within the purview of the act. Second, defendant contended that any alleged liability or other claims or demands arising out of a contract with the State of Michigan are within the exclusive jurisdiction of the Michigan Court of Claims. Finally, defendant contended that plaintiff had failed to state a claim upon which relief could be granted.

On September 11, 1973, after a hearing, the circuit court issued an opinion holding that the 1970 Standard Specifications for Highway Construction contract provisions in dispute were not "rules" subject to review under the Administrative Procedures Act, MCLA 24.263; MSA 3.560(163), and that consequently the court lacked subject-matter jurisdiction over Greenfield's claim. Plaintiff filed a motion to stay the entry of accelerated judgment in favor of defendant.

A second hearing was held later and the court issued a second opinion, this time granting the declaratory relief requested by the contractor.

The court again found, however, that the 1970 Standard Specifications for Highway Construction were not "rules" subject to review under the Administrative Procedures Act and found, in addition, that defendant had "not taken any steps for the promulgation of rules, regulations and procedures by which to issue declaratory rulings and that, therefore, the decision of June 6, 1973 amounts to no more than an administrative pronouncement". However, the court held the June 6 letter to be arbitrary and capricious and a deprivation of due process. It ruled that the Court of Claims lacked the requisite equitable jurisdiction to grant declaratory relief. Concluding that the plaintiff had supported its contentions on the merits, however, the court issued its declaratory judgment that a change of conditions had occurred. The issue of money damages was expressly left for later determination in the Court of Claims.

The Court of Appeals reversed, holding that the circuit court lacked subject-matter jurisdiction over the dispute. 58 Mich App 49; 227 NW2d 223 (1975). We granted leave to appeal. 394 Mich 836 (1975).

Our resolution of the case turns upon the answers to two specific questions:

1) Is Section 1.04.03(c) of the 1970 Standard Specifications for Highway Construction a *rule* within the definition of the Administrative Procedures Act, and

2) Does the circuit court have jurisdiction in this case to issue a declaratory judgment binding upon the defendant State of Michigan.

Our answer to both questions is no.

I

Section 63 of the Administrative Procedures Act, MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.,* provides narrowly circumscribed authority in the circuit court to judicially review a declaratory ruling issued by an agency of state government, and provides that such review is conducted in the same manner as an agency final decision or order in a contested case.[2]

Section 64 of the act confers upon the circuit court authority to issue a declaratory judgment concerning the validity or applicability of an agency rule, providing however the plaintiff has first "requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously".[3]

---

[2] MCLA 24.263; MSA 3.560(163):

"On request of an interested person, an agency may issue a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency. An agency shall prescribe by rule the form for such a request and procedure for its submission, consideration and disposition. A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by any court. An agency may not retroactively change a declaratory ruling, but nothing in this subsection prevents an agency from prospectively changing a declaratory ruling. A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case."

[3] MCLA 24.264; MSA 3.560(164):

Greenfield claims that Section 1.04.03(c) of the 1970 Standard Specifications for Highway Construction is a *rule* within the definition of the Administrative Procedures Act and that the highway department letter of June 6, 1973 was a declaratory ruling concerning the applicability of the claimed rule.

We disagree on both points.

A rule is defined in § 7 of the Administrative Procedures Act as follows:

" 'Rule' means an agency regulation, statement, standard, policy, ruling, or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency * * * ." MCLA 24.207; MSA 3.560(107).

Section 1.04.03(c) of the 1970 Standard Specifications for Highway Construction provides:

"Changed Physical Conditions.—Should the contractor encounter or the engineer discover, during the progress of the work, physical conditions at the site differing materially from those shown in the contract and included documents, or unknown physical conditions of a nature differing materially from those gener-

"Unless an exclusive procedure or remedy is provided by a statute governing the agency, the validity or applicability of a rule may be determined in an action for declaratory judgment when the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The action shall be filed in the circuit court of the county where the plaintiff resides or has his principal place of business in this state or in the circuit court for Ingham county. The agency shall be made a party to the action. An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously. This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted."

ally recognized as work of the character provided for in the contract, the engineer will investigate the conditions. Unless the engineer finds that the work required materially changes the character of the work, the work will be paid for at the contract unit price. If the work required is of sufficient magnitude to affect the unit cost by 10% or more, an allowance will be made on such basis as is mutually agreed upon and authorized in advance of the performance of the work. If agreement cannot be reached as to the basis of payment for which the contractor deems compensation to be due him, the work shall proceed as provided under Disputed Claims for Extra Compensation, 1.05.12."

The 1970 Standard Specifications for Highway Construction are found in a bound volume of 735 pages. The specifications include definitions of terms, allocation of duties between the contractor and the state, payment terms, and hundreds of pages of highly technical and detailed information concerning construction methods and techniques, soil composition requirements, metal heat treating methods, and technical details touching almost every conceivable aspect of highway construction work for which the State of Michigan might contract. Relevant portions of the standard specifications, including Section 1.04.03(c), are routinely incorporated by reference in the highway department construction contracts not only to avoid the cumbersome necessity of reproducing the highly detailed information in every separate contract, but to enable prospective bidders upon state construction contracts to know in advance the bid requirements and construction specifications which will apply if they bid upon a state-owned highway construction project.

It is undisputed that no part of the 1970 Standard Specification for Highways Construction have ever been promulgated as agency rules within the

meaning of § 7 of the Administrative Procedures Act as is required by chapter 3 of the act, as a condition of their validity. It is likewise undisputed that the statutory steps preliminary to the adoption of agency rules, including publication of the proposed rule, and publication and transmission of notice of public hearing[4] were never undertaken with respect to Section 1.04.03(c) or any of the standard specifications.

We agree with the trial court and the Court of Appeals that Section 1.04.03(c) of the 1970 Standard Specifications for Highway Construction is not an agency rule within the meaning of § 7 of the Administrative Procedures Act. It is, as its title suggests, one of hundreds of standard contract terms and specifications governing the contractual relationship between the state and contractors engaged in state highway work. It follows, there-

---

[4] MCLA 24.241; MSA 3.560(141):

"(1) Before the adoption of a rule an agency shall give notice of a public hearing and offer any person an opportunity to present data, views and arguments. The notice shall be given within the time prescribed by any applicable statute, or if none then at least 10 days before the public hearing and at least 20 days before the adoption of the rule. The notice shall include:

"(a) A reference to the statutory authority under which the action is proposed.

"(b) The time and place of the public hearing and a statement of the manner in which data, views and arguments may be submitted to the agency at other times by any person.

"(c) A statement of the terms or substance of the proposed rule or a description of the subjects and issues involved, and the proposed effective date of the rule.

"(2) The agency shall transmit copies of the notice to the joint committee on administrative rules, the legislative service bureau, the office of the governor and all persons who have requested the agency in writing for advance notice of proposed action which may affect them. The notices shall be by mail or otherwise in writing to the last address specified by the person. Requests for notices shall be renewed each December.

"(3) The public hearing shall comply with any applicable statute but is not subject to the provisions of this act governing contested cases, unless a rule is required by law to be adopted pursuant to adjudicatory procedures."

fore, that the June 6, 1973 letter from the defend-
ant's Central Office Adjustment Board, and the
endorsement thereof by the Director of the Depart-
ment of State Highways, refusing to allow extra
compensation, did not constitute "a declaratory
ruling as to the applicability * * * of a rule or
order of the [defendant] agency" subject to circuit
court judicial review under § 63 of the act.

Similarly, there was no basis for a declaratory
judgment concerning "the validity or application
of a *rule*" under § 64 of the act.

## II

In addition to the judicial review of administra-
tive action sought in count I of its complaint,
plaintiff prayed in count II for a declaratory judg-
ment:

"A. That the delays heretofore incurred have been on
account of unusual conditions beyond the control of
plaintiff.
"B. That plaintiff is entitled to an extension of the
contract time to compensate it for those days unavoida-
bly lost by reason of said delays.
"C. That said extension of time should be an addi-
tional compensatory working day during the normal
working season on Lake St. Clair, April 1 through
November 1, for each day lost by plaintiff as a result of:
(1) Change of conditions at work site.
(2) Stop Order issued by Army Corps of Engineers.

The defendant claims the circuit court was with-
out jurisdiction to entertain the complaint for
declaratory relief and that the plaintiff's exclusive
remedy is in the Court of Claims.

We agree, but for reasons not fully addressed by
either party.

This Court has long recognized the well established rule that a state cannot be sued without its consent, granted by legislative enactment. *McNair v State Highway Department,* 305 Mich 181, 187; 9 NW2d 52 (1943); *Mead v Michigan Public Service Commission,* 303 Mich 168, 173; 5 NW2d 740 (1942); *Manion v State Highway Commissioner,* 303 Mich 1, 19; 5 NW2d 527 (1942); *cert den* 317 US 677 (1942); *McDowell v Warden of Michigan Reformatory at Ionia,* 169 Mich 332, 337; 135 NW 265 (1912); *Board of Supervisors of Sanilac County v Auditor General,* 68 Mich 659; 36 NW 794 (1888); *Michigan State Bank v Hastings,* 1 Doug 225 (Mich, 1844).

There is, of course, a distinction between sovereign immunity from *suit* and sovereign immunity from *liability.*

Legislative waiver of a state's suit immunity merely establishes a remedy by which a claimant may enforce a valid claim against the state and subjects the state to the jurisdiction of the court.

By waiving its immunity from liability, however, the state concedes responsibility for wrongs attributable to it and accepts liability in favor of a claimant. In so doing it may even create a cause of action in favor of the claimant which did not theretofore exist. *Minty v Board of State Auditors,* 336 Mich 370; 58 NW2d 106 (1953); *Van Antwerp v State,* 334 Mich 593; 55 NW2d 108 (1952).

It was to various aspects of the issue of sovereign immunity from *liability* that this Court addressed itself repeatedly in the last decade, most recently upholding statutory state tort immunity in *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), and abolishing judicially created tort immunity in *Pittman v Taylor,* 398 Mich 41; 247 NW2d 512 (1976).

We address today, however, the issue of sovereign immunity from *suit.* Broadly stated, the issue is whether the State of Michigan's sovereign immunity from suit has been waived to the extent that it may be sued in our courts of general jurisdiction upon a complaint for declaratory judgment.

While it is clear that the circuit court has general original jurisdiction in matters of law and equity, including jurisdiction to issue declaratory judgments, its jurisdiction is not limitless.

Article 6, § 13 of the Constitution of the State of Michigan provides in part:

"The circuit court shall have original jurisdiction in all matters *not prohibited by law."* (Emphasis added.)

MCLA 600.605; MSA 27A.605 provides:

"Circuit courts have original jurisdiction to hear and determine all civil claims and remedies, *except where exclusive jurisdiction is given* in the constitution or *by statute to some other court or where the circuit courts are denied jurisdiction by the* constitution or *statutes of this state."* (Emphasis added.)

To the foregoing emphasized exceptions this Court has earlier and repeatedly added those cases in which the defendant is by its sovereignty suit-immune. *Lucking v People,* 320 Mich 495; 31 NW2d 707 (1948); *Manion v State Highway Commissioner, supra; Missouri Tie & Lumber Co v Sullivan,* 275 Mich 26; 265 NW 779 (1936); *McDowell v Warden of Reformatory, supra; People ex rel Ayres v Board of State Auditors,* 42 Mich 422; 4 NW 274 (1880).

Thus it is well settled that the circuit court is without jurisdiction to entertain an action against the State of Michigan unless that jurisdiction shall have been acquired by legislative consent.

In 1939, with enactment of the Court of Claims Act,[5] the Legislature, for the first time, adopted a comprehensive legislative scheme authorizing suit against the State of Michigan and its various agencies.[6] Prior to that time the Legislature had permitted suit only against a few selected state agencies and then only for limited periods.[7] Save for these scattered exceptions, until 1939 the state could not be sued because the requisite legislative consent had not been given. *McDowell v Warden of Reformatory, supra.*

Today the Court of Claims Act[8] stands as this state's controlling legislative expression of waiver of the state's sovereign immunity from direct action suit against it and its agencies and of their submission to the jurisdiction of a court.

It is controlling because in addition to authorizing suit against the state, the act also limits any prior legislative authorization which may be inconsistent with the act. Those scattered legislative expressions waiving the state's suit immunity which were enacted prior to the original Court of Claims Act must be construed within the terms and in light of the subsequent act. Such construction is mandated by the sweeping language of the act which clearly manifests the Legislature's intent to limit its authorization to suits in the Court

---

[5] 1939 PA 135, subsequently amended and re-enacted as 1961 PA 236, MCLA 600.6419; MSA 27A.6419.

[6] *Taylor v Auditor General,* 360 Mich 146, 149–150; 103 NW2d 769 (1960); *Mead v Michigan Public Service Commission, supra,* 170; *Manion v State Highway Commissioner, supra,* 20–21.

[7] *See* for example *McDowell v Warden of Reformatory, supra.* (Suit against a state prison warden brought under authority of 1897 CL 2091. The provision authorizing suit was repealed by 1911 PA 219.)

*Wheeler v Board of Control of State Public School,* 137 Mich 291; 100 NW 394 (1904). (Contract suit against the Board of Control of the State Public School brought under authority of 1897 CL 2021. 1903 PA 143 rescinded said board's corporate powers thereby repealing the provision authorizing it to sue and be sued.)

[8] MCLA 600.6419; MSA 27A.6419.

of Claims. So construed, the Court of Claims Act is both permissive and restrictive. This Court has heretofore applied this rationale to post-Court of Claims Act legislation waiving suit immunity by holding that the scope of any such authorization is limited by the terms and conditions of jurisdiction established in the Court of Claims Act. *Hirych v State Fair Commission,* 376 Mich 384, 390; 136 NW2d 910 (1965).

It follows logically, therefore, that to the extent any pre-Court of Claims Act authorization of suit may exceed the jurisdictional limitations imposed by the Court of Claims Act, the former is superseded and limited by the latter. To the extent inconsistent with our opinion today, *Hunt v State Highway Commissioner,* 350 Mich 309; 86 NW2d 345 (1957), is expressly overruled.[9]

---

[9] *Hunt* held that a circuit court had equitable jurisdiction to issue a permanent injunction and order specific performance of a contract for the sale of private lands to the state through the State Highway Commissioner. The harsh facts involved a written contract for the sale of a business site owned by a husband and wife to the state for highway construction purposes. The state agent who negotiated the deal was later fired for misconduct and prosecuted. Thereafter the highway commissioner attempted to renege on the agreement to pay the plaintiffs some $97,500 after the plaintiffs had indebted themselves upon a $30,600 bank loan in order to acquire a new site for their business.

This Court appeared to rest its approval of the circuit court's exercise of equitable jurisdiction on three grounds:

1. That by authorizing the highway commissioner to make contracts in connection with the purchase of lands and expend funds appropriate for that purpose the Legislature waived the state's (highway commissioner's) suit immunity in connection therewith;

2. That the action at law available to the plaintiffs in the Court of Claims was, *in that case,* an inadequate remedy; and

3. That upon being sued in equity in the circuit court the defendant highway commissioner filed a cross-claim (nowadays a counterclaim) alleging fraud and seeking revision of the agreement and in so doing "submitted himself to the jurisdiction and thereby cast aside the vestments of immunity".

How the court could be vested with subject-matter jurisdiction it did not otherwise have by a party (the state via its agent) "[submitting] himself to the jurisdiction" was not explained by the Court in *Hunt.*

We have heretofore held that a statutory relinquishment of common-law sovereign immunity from suit must be strictly construed. *Manion v State Highway Commissioner, supra,* 19. Thus a cause of action brought pursuant to a waiver of suit immunity must be of a nature and in a forum permitted by the waiver.

The Court of Claims Act is manifestly a narrowly limited waiver of suit immunity. It restricts by its terms the kinds of claims which may be brought, creates a previously nonexistent court of limited jurisdiction wherein such claims may be prosecuted, and declares the new forum to have exclusive jurisdiction to hear them.

The pertinent section of the act provides:

"(1) Except as provided in section 6440, the jurisdiction of the court of claims as conferred upon it by this chapter over claims and demands against the state or any of its departments, commissions, boards, institutions, arms or agencies, shall be *exclusive.* The state administrative board is hereby vested with discretionary authority upon the advice of the attorney general, to hear, consider, determine and allow any claim against the state in an amount less than $100.00. Any claim so allowed by the state administrative board shall be paid in the same manner as judgments are paid under section 6458 upon certification of the said allowed claim by the secretary of the state administrative board to the clerk of the court of claims. The court has power and jurisdiction:

"(a) To hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments, commissions, boards, institutions, arms or agencies." (Emphasis added.) MCLA 600.6419; MSA 27A.6419.

This Court has previously recognized the limited scope of the Court of Claims Act as a waiver of sovereign suit immunity, in holding that court to

be without "the broad and inherent powers of a constitutional court of general jurisdiction". *Taylor v Auditor General,* 360 Mich 146, 150; 103 NW2d 769 (1960).[10]

In sharply restricting the causes of action which may be brought against the state and in creating a new court of limited and exclusive jurisdiction solely for that purpose, the Legislature indicated with ringing clarity that its waiver of sovereign suit immunity under the Court of Claims Act was limited to the prosecution of claims within the Court of Claims.

We hold, for the foregoing reasons, that the circuit court was without jurisdiction to entertain the plaintiff's suit for judicial review and declaratory judgment under the Administrative Procedures Act, or declaratory judgment under GCR 1963, 521.

The Court of Appeals is affirmed.

Coleman and Fitzgerald, JJ., concurred with Ryan, J.

Coleman, J. *(concurring).* I have signed Justice Ryan's opinion because I agree "that § 1.04.03(c) of the 1970 Standard Specifications for Highway Con-

---

[10] In *Taylor v Auditor General,* this Court declared that the Court of Claims was without the jurisdiction to grant a declaratory judgment. This conclusion was premised on the fact that the declaratory judgment act did not authorize the rendition of declaratory judgments by any and all courts of record, but only those which had a law side and an equity side. Since the Court of Claims "does not possess the broad and inherent powers of a constitutional court of general jurisdiction", in other words does not have an "equity side", it could not render a declaratory judgment.

With the repeal of the declaratory judgment act, 1948 CL 691.501, by the Revised Judicature Act, MCLA 600.9901; MSA 27A.9901, the former language which restricted the power to render declaratory judgments to those courts which have both an equity side and a law side is no longer controlling. However, because the power of the Court of Claims is not at issue in this case, we decline to decide whether the Court of Claims is now empowered to render declaratory judgments.

struction is not an agency rule within the meaning of § 7 of the Administrative Procedures Act". I also agree that "the circuit court was without jurisdiction to entertain the complaint for declaratory relief". Under the circumstances of this case, plaintiff's exclusive remedy is in the Court of Claims.

I write to emphasize several points.

First, there has been no showing that the highway department's use of standard specifications was an attempt to evade or circumvent the APA.

Second, adopting Justice LEVIN's analysis would permit plaintiffs to institute parallel actions against the state—one in the circuit court, another in the Court of Claims. Recent experience has demonstrated how confusing and time consuming such a procedure can be. See *In re Weldon,* 397 Mich 225; 244 NW2d 827 (1976).

Third, Justice LEVIN's analysis would force state agencies either to discard standard specifications or move to adopt them as rules under the APA. The former is inefficient, costly in both time and money. The latter is cumbersome and would subject the policy and contract decisions of state agencies to frequent circuit court review.

This last point is of great concern to me. Our decision cannot be limited to the highway department. It would apply to all the many agencies of state government. It would significantly increase the caseload of an already overburdened circuit court. Delay, confusion, frustration are predictable.

It is not necessary to rely on the circuit courts for a proper forum in which to resolve disputes between contractors and a state department. The Legislature has provided a forum—the Court of Claims. It has exclusive jurisdiction "[t]o hear and determine all claims and demands * * * against

the state and any of its departments". MCLA 600.6419; MSA 27A.6419.

Greenfield is seeking a declaratory judgment on a contract dispute. The Court of Claims can provide such relief. Its "[p]ractice and procedure * * * shall be in accordance with the statutes and court rules prescribing the practice in the circuit courts". MCLA 600.6422; MSA 27A.6422. GCR 1963, 521 provides for declaratory judgments which Honigman and Hawkins say have "been used to good effect in Michigan in a wide range of cases involving matters such as the meaning and effect of a contract".* Since enactment of the Revised Judicature Act, there is nothing in the statutes to prevent the Court of Claims from giving such relief.

Greenfield should be permitted to file its claim in the Court of Claims even if the statutory limitation period has run. It has acted in good faith. The circuit court did assume jurisdiction. Greenfield had no reason to believe it was in the wrong forum. Certainly the limitation period should be tolled while a disposition—trial and appellate— was made.

FITZGERALD, J. *(concurring).* I am signing Justice RYAN's opinion and concur that the contract specifications are not "rules" within the meaning of the Administrative Procedures Act of 1969, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* that the circuit court erroneously asserted jurisdiction of this case; and that whether or not the Court of Claims has declaratory judgment power is not an issue in this case.

I would add, in agreement with Justice COLE-

---

* 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 684.—REPORTER.

MAN, and for the reasons she stated, that Greenfield should be permitted to file its claim in the Court of Claims even if the statutory limitation period has run.

LEVIN, J. Greenfield Construction Company, Inc., was the successful bidder on a sewer outlet project extending some 2000' into Lake St. Clair. When construction commenced the water level was approximately 2' higher than at the time the plans were prepared by the Department of State Highways and .4' higher than the stated historic high water mark.

Greenfield commenced this action in the circuit court asserting that the highway department's denial of its claim seeking additional compensation for changed physical conditions was subject to judicial review as a declaratory ruling under the Administrative Procedures Act.[1] The circuit court held that it was not empowered to review the denial under the APA but, acting under its general judicial power, entered a declaratory judgment that Greenfield is entitled to additional compensation, the amount to be determined in the Court of Claims. The Court of Appeals agreed that circuit court review was not available under the APA but reversed the declaratory judgment on the ground that the Court of Claims has exclusive subject matter jurisdiction of claims and demands against the state and its departments.

Three of our colleagues would affirm the Court of Appeals decision that Greenfield is not entitled to judicial relief, in advance of performance of its contract with the highway department, in the circuit court, whether by review under the APA of

---

[1] MCLA 24.263; MSA 3.560(163).

the department's denial of Greenfield's claim, or by original action for a declaratory judgment.

### A

The opinion signed by three of our colleagues states that because the provisions invoked by Greenfield in seeking additional compensation for changed physical conditions are expressed as standard contract provisions and were not promulgated in the manner required by the APA they do not constitute a "rule" and therefore the department's denial of additional compensation was not a declaratory ruling under that act.

We are of the opinion that the provisions invoked by Greenfield are nevertheless a "rule" and that the department's denial of Greenfield's claim for additional compensation was a declaratory ruling. We would remand to the circuit court for judicial review, pursuant to the APA, of the department's denial of Greenfield's claim.

### B

Our colleagues' opinion further states that the circuit court erred in asserting jurisdiction, apart from the APA, to grant a declaratory judgment against a department of state government. We agree.

We would place our concurrence in that result solely on the ground—the basis of the Court of Appeals opinion on this issue—that the Court of Claims, under its enabling act, has exclusive subject matter jurisdiction of an original action asserting a claim or demand against a department of state government.[2] Since this action for a declara-

---

[2] "The circuit court shall have original jurisdiction in all matters *not prohibited by law;* appellate jurisdiction from all inferior courts

tory judgment asserts a claim against a department of state government, it cannot be maintained in the circuit court.

We would, additionally, hold, however, that because of revisions of the statute and court rules regarding declaratory judgments after *Taylor v Auditor General,* 360 Mich 146; 103 NW2d 769 (1960), was decided, the Court of Claims has jurisdiction to render a declaratory judgment regarding a claim or demand against the state or a department of state government.

This Court's action in vacating the declaratory judgment granted by the circuit court, based on the exclusivity of the jurisdiction of the Court of Claims of an original action[3] asserting a claim or demand against a department of state government, should be without prejudice to Greenfield's seeking a declaratory judgment in the Court of Claims,[4] subject to whatever limitations the doctrines of

and tribunals except as otherwise provided by law; power to issue, hear and determine prerogative and remedial writs; supervisory and general control over inferior courts and tribunals within their respective jurisdictions in accordance with rules of the supreme court; and jurisdiction of other cases and matters as provided by rules of the supreme court." Const 1963, art 6, § 13 (emphasis supplied).

[3] As set forth in the text accompanying fns 42 and 43, *infra,* the exclusive jurisdiction of the Court of Claims pertains to original actions, not to judicial *review* under the APA.

[4] RJA 5856 provides:

"The statutes of limitations are tolled when

"(1) the complaint is filed and a copy of the summons and complaint are served on the defendant, or when

"(2) jurisdiction over the defendant is otherwise acquired * * *." MCLA 600.5856; MSA 27A.5856.

The accompanying commentary by the Joint Committee on Michigan Procedural Revision states:

"In the event of the dismissal, on some ground other than on the merits (as for example—lack of jurisdiction over the subject matter) of an action in which jurisdiction over the defendant is acquired, the period of time from the time of service or the acquisition of jurisdiction over the defendant until dismissal will not count as a part of the time of limitation, for during such time the statute has been tolled. Subsections (1) and (2)." 34 MCLA, p 945; 23 MSA, p 198.

exhaustion of administrative remedies, res judicata and related principles may impose.

# I

Greenfield's claim to circuit court review under the APA is based primarily[5] on its contention that the highway department's denial of its claim for additional compensation was a declaratory ruling.

The APA provides that on request of an "interested person, an agency may issue a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency", and that "[a] declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case".[6]

Greenfield's claim raises the following issues:[7]

[5] Greenfield alternatively seeks a declaratory *judgment* pursuant to the APA regarding the applicability of the asserted rule. The act provides: "An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously." MCLA 24.264; MSA 3.560(164).

Since this provision is applicable only when the agency refuses a request for a declaratory ruling, and we conclude that the highway department's "final position" rejecting Greenfield's claim was a declaratory ruling *(see* part II, *infra)* and, thus, Greenfield's request for such a ruling was granted, there is no need to consider this alternative contention.

[6] "On request of an interested person, an agency may issue a declaratory ruling as to the applicability to an actual state of facts of a statute administered by the agency or of a rule or order of the agency. An agency shall prescribe by rule the form for such a request and procedure for its submission, consideration and disposition. A declaratory ruling is binding on the agency and the person requesting it unless it is altered or set aside by any court. An agency may not retroactively change a declaratory ruling, but nothing in this subsection prevents an agency from prospectively changing a declaratory ruling. A declaratory ruling is subject to judicial review in the same manner as an agency final decision or order in a contested case." MCLA 24.263; MSA 3.560(163).

[7] It is undisputed that Greenfield is an "interested person", that the state highway department is an "agency", and that the asserted

I. Is the standard contract provision concerning claims for additional compensation for changed physical conditions a "rule" within the meaning of the APA?

II. Was the decision of the highway department denying Greenfield's claim a "declaratory ruling"? If it was, shall the judicial review provided by the APA be in the circuit court or in the Court of Claims?

The threshold issue is whether the invoked provisions of the standard specifications for highway construction contracts constitute a "rule" although those provisions are embodied in a contract and were not promulgated in accordance with the notice and comment procedures of the APA.[8]

A

An APA rule may be substantive or procedural or both. The act provides that a "regulation, statement, standard, policy, ruling or instruction" is a rule if either (i) it has "general applicability" and "implements or applies law enforced or administered by the agency", or (ii) it "prescribes the organization, procedure or practice of the agency". (See part B and fn 25, *infra,* for full text of the definition.)

The standard contract provisions regarding claims for additional compensation for changed

disparity between the water levels in the plans and those found upon commencement of construction are an "actual state of facts" within the meaning of the APA.

Distinguishable are cases involving disappointed bidders for government contracts. *See, e.g., Perkins v Lukens Steel Co,* 310 US 113; 60 S Ct 869; 84 L Ed 1108 (1940). The rationale of that decision, based on the rights/privileges distinction, has been the subject of constant criticism and gradual erosion. *See* Grossbaum, *Procedural Fairness in Public Contracts: The Procurement Regulations,* 57 Va L Rev 171, 227–259 (1971).

[8] MCLA 24.231 *et seq.;* MSA 3.560(131) *et seq.*

physical conditions have both a substantive and a procedural content:

—They create a right and impose a duty to apply to the department, before commencement of the work, for an increase in compensation because of any asserted change in physical conditions—the substantive element.

—They also establish a procedure by which the merits can be resolved.

The provisions invoked by Greenfield state that should a contractor encounter "physical conditions at the site differing materially from those shown in the contract and included documents" increased compensation will be allowed if the engineer finds that "the work required materially changes the character of the work" and the work required is of sufficient magnitude to affect the unit cost by 10% or more.[9] It is further provided that failure of the contractor to notify the engineer of such a claim will generally be considered a waiver of claim for extra compensation.[10] The engineer's decision is appealable to the central office adjustment board, an informal panel that advises the director of the department on claims of contractors for additional compensation.

The Attorney General states that these standard contract provisions embody the "procedures used by the department to process claims for extra compensation" and that in seeking additional compensation Greenfield "followed established proce-

[9] Michigan Department of State Highways, Standard Specifications for Highway Construction (1970), 1.04.03(c).

The standard contract specifications define "engineer" as "[t]he Director of the Department or the Engineer of the Department designated by the Director" responsible for engineering supervision of the project. *Id.,* 1.01.02.

[10] "Failure on the part of the Contractor to give such notification or to afford the Engineer proper facilities for keeping strict account of actual cost will constitute a waiver of the claim for such extra compensation except that consideration will be given to claims substantiated by project records." *Id.,* 1.05.12.

dures".[11] It therefore appears that without regard to whether these provisions are seen as a substantive statement of "general applicability, which implements or applies law enforced or administered by the agency", they at least concern "procedure or practice of the agency" and therefore, on that basis alone, are within the APA's definition of the term "rule".[12]

These standard contract provisions are additionally, however, a substantive statement of general applicability which "implements" law administered by the agency.

The highway department is specifically[13] empow-

[11] "In keeping with the provisions of Standard Specification 1.05.12, the appellee for many years has periodically mailed notices to contractor associations and individual contractors *explaining procedures used by the department to process claims for extra compensation.* Where under the provisions of Specification 1.05.12 the project engineer has disapproved a claim in writing, contractors, by virtue of department notices, are aware that they may require that the project engineer and highway department district offices forward claims to Lansing for further consideration and that, if desired, contractors may ask to meet personally with the department director or his representatives (Central Office Adjustment Board) to discuss contract claims and that contractors will thereafter be notified in writing by the department director concerning the department's final position. In the case at bar, the appellant Contractor followed *established procedures* and plaintiff's exhibit B constitutes the department's final position." (Emphasis supplied.)

[12] Despite the mandate on all agencies to promulgate rules "describing its organization and stating the general course and method of its operations" and "prescribing its procedures available to the public and the methods by which the public may obtain information and submit requests" (MCLA 24.233; MSA 3.560[133]), the highway department has failed to do so.

The standard contract provisions invoked by Greenfield should, therefore, because of their procedural content, be enforced without regard to whether it is thought that the substantive aspects of those provisions are "rules".

*See, also,* fn 41, *infra,* and accompanying text regarding the department's failure to promulgate rules concerning requests for declaratory rulings.

[13] *See* 1 Davis, Administrative Law Treatise, § 5.03, p 299, regarding the implication of such a power apart from express authorization.

All administrative agencies have the inherent authority to adopt procedural rules (*see* Cramton & Holmes, eds, The New Administra-

ered to adopt rules "to implement its powers and this act, in accordance with the provisions of" the APA.[14] It is thus empowered to adopt so-called legislative rules having the force of law.[15]

The primary function of the highway department is to design, produce, maintain and operate highways and ancillary facilities.[16] The department's substantive decisions of general applicability regarding implementation of its powers and functions in the design and production of highways and ancillary facilities determine the highways and facilities that will be produced.

Thus, while this agency of state government does not, in the ordinary sense, promulgate policies for the governance and guidance of the citizenry, it is nevertheless a policy maker, determining the design and manner of production, maintenance and operation of highways and ancillary facilities. The department's substantive decisions of general applicability, implementing the law it administers, are "rules" however or wherever expressed.

The department's substantive decisions regarding the design and production of highways and ancillary facilities are expressed in elaborate detail in bound, printed volumes containing hundreds of pages,[17] one relating to the construction of

tive Procedures Course Handbook [Ann Arbor: Institute of Continuing Legal Education, 1970], ¶ 312, pp 49–53) and, indeed, are obliged to do so. *See,* fn 12, *supra.*

[14] MCLA 247.809; MSA 9.216(9).

[15] "When a rule is legislative, the reviewing court has no authority to substitute judgment as to the content of the rule, for the legislative body has placed the power in the agency and not in the court." 1 Davis, *supra,* § 5.03, p 299.

*See,* 1 Davis, *supra,* § 5.03, pp 298 *et seq.,* discussing the distinction between legislative and interpretive rules.

[16] *See* MCLA 247.651a, 247.651b, 247.807(j); MSA 9.1097(1a), 9.1097(1b), 9.216(7j).

[17] The Standard Specifications for Highway Construction, *supra,* contains 735 pages.

highways, another to bridges, and so forth.[18] Since those decisions apply to the design and production of all highways and ancillary facilities they are of general applicability.

Unless the highway department enters the construction business it cannot build highways without contractors. Disparities between anticipated and actual physical conditions occur with sufficient frequency so that the department has adopted substantive policies and procedures regarding claims for changed physical conditions which provide a means of resolving disputes with contractors. Those policies and procedures are as fully binding on contractors as formal rules.

While comparable provisions are not uncommon in private contracting it is the legislative judgment that when an agency of state government adopts substantive policies of general applicability that implement or apply law enforced or administered by it or establishes practice and procedure that the safeguards set forth in the APA are necessary for the protection of those affected by the agency's action. This legislative judgment recognizes that, although there are some private enterprises and institutions which may be able to fend for themselves, most persons confronted by agency action are relatively powerless. That imbalance between most agencies and most persons obtains whether the form in which the agency exerts its law-imple-

---

[18] The opinion signed by three justices characterizes provisions of the standard specifications of the contract as "highly technical and detailed information" and concludes that they are not rules. Yet when the department seeks to bind the citizenry as a whole and therefore cannot make its directives effective without complying with APA rule-making procedures, similar highly technical and detailed statements are regarded by it, and are duly promulgated, as rules, *See* 1970–1971 AACS, R 247.201 *et seq.,* prescribing, pursuant to 1969 PA 200; MCLA 247.321; MSA 9.140(21), the composition and manner of constructing private driveways intersecting with highways.

menting power is formal rule making, secret rule making or contracting.

The Legislature in adopting the APA, the people in providing for judicial review of certain agency decisions (see fn 35 and accompanying text, *infra*), did not intend that the safeguards established for their protection could be readily avoided by ignoring the requirements for rule making and incorporating law-implementing decisions of general applicability in contracts with those who are affected by the agency's action.

## B

Michigan's APA, modeled[19] on the uniform act,[20] in turn based on the Federal act,[21] does not, in contrast with the Federal act,[22] contain a contract exception exempting from the generality of the act's definition of the term "rule" expressions of agency policy, practice and procedure, otherwise within that definition, respecting governmental contracting.

The absolute exemption in the Federal APA for expressions of policy respecting governmental contracting has been criticized as promoting insularity and irresponsibility of government agencies.[23] The Administrative Conference of the United States urged repeal of the contract exception. The conference saw, as did the ABA House of Dele-

[19] 3 MCLA (1977–1978 Cum Supp), commentary preceding § 24.201, p 175. *See, generally,* Cramton & Holmes, *supra.*

[20] Model State Administrative Procedure Act (Revised, 1961), 13 ULA, Civil Procedural and Remedial Laws (1977 Cum Supp), p 253, and Commissioners' Comment, pp 260–261.

[21] 5 USC 500 *et seq.*

[22] 5 USC 553(a) provides: "This section applies * * * except to * * * public property, loans, grants, benefits, or contracts."

[23] *See* Bonfield, *Public Participation in Federal Rulemaking Relating to Public Property, Loans, Grants, Benefits, or Contracts,* 118 U Pa L Rev 540 (1970).

gates subsequently, that the selection and wording of contract clauses have a significant impact on the public and on private enterprise.[24]

The first part of the Michigan "rule" definition expresses its scope in broadly inclusive terms:

"[A]n agency regulation, statement, standard, policy, ruling or instruction of general applicability, which implements or applies law enforced or administered by the agency, or which prescribes the organization, procedure or practice of the agency, including the amendment, suspension or rescission thereof * * * ." MCLA 24.207; MSA 3.560(107).

The second part of the definition is a series of specific exclusions from the broader concept,[25] none of which are here pertinent.

---

[24] The Administrative Conference adopted a resolution urging repeal of the contract exception at the 3d Plenary Session, Oct. 22–29, 1969 in Washington, D.C., Recommendation No 16, 115 Congressional Record 36178 (1969). *See, also,* Resolution of the American Bar Association House of Delegates, 97 Reports of ABA 571 (1972).

[25] Section 7 of the APA, as set forth in the accompanying text, continues:

" * * * but does not include the following:

"(a) A resolution or order of the state administrative board.

"(b) A formal opinion of the attorney general.

"(c) A rule or order establishing or fixing rates or tariffs.

"(d) A rule or order pertaining to game and fish and promulgated under Act No. 230 of the Public Acts of 1925, as amended, being sections 300.1 to 300.5 of the Compiled Laws of 1948, Act No. 165 of the Public Acts of 1929, as amended, being sections 301.1 to 306.3 of the Compiled Laws of 1948 and Act No. 286 of the Public Acts of 1929, as amended, being sections 311.1 to 315.2 of the Compiled Laws of 1948.

"(e) A rule relating to the use of streets or highways the substance of which is indicated to the public by means of signs or signals.

"(f) A determination, decision or order in a contested case.

"(g) An intergovernmental, interagency or intra-agency memorandum, directive or communication which does not affect the rights of, or procedures and practices available to, the public.

"(h) A form with instructions, an interpretive statement, a guideline, an informational pamphlet or other material which in itself does not have the force and effect of law but is merely explanatory.

"(i) A declaratory ruling or other disposition of a particular matter as applied to a specific set of facts involved.

The broad general definition with specific exceptions indicates that the definition is to be applied comprehensively. An agency statement within the first part of the definition and not excepted in the second part is a "rule". The Supreme Judicial Court of Massachusetts, which has an APA comparable to Michigan's, has not recognized a contract exception.[26]

The generality of "statement" indicates that the form in which the pronouncement is made is without significance. Other states, applying similar definitions, have refused to allow the form of the pronouncement to defeat the breadth of the definition.[27] It is not dispositive that the agency does not call its statement a rule. "[T]he label that the particular agency puts upon its given exercise of administrative power is not, for our purposes, conclusive; rather, it is what the agency does in fact." *Lewis-Mota v Secretary of Labor,* 469 F2d 478, 481–482 (CA 2, 1972).[28]

---

"(j) A decision by an agency to exercise or not to exercise a permissive statutory power, although private rights or interests are affected thereby." MCLA 24.207; MSA 3.560(107).

[26] *See Commissioner of the Department of Community Affairs v Boston Redevelopment Authority,* 362 Mass 602; 289 NE2d 867 (1972), and *Massachusetts General Hospital v Commissioner of Public Welfare,* 346 Mass 739; 196 NE2d 181 (1964).

[27] *See, for example, Frankenthal v Wisconsin Real Estate Brokers' Board,* 3 Wis 2d 249; 88 NW2d 352; 89 NW2d 825 (1958). A mimeographed instruction concerning partnership licensing, though not issued and filed as a rule, nevertheless was held to be a rule under the definition in the APA because it was a statement of policy of general applicability not falling within any stated exception. *See United States v Heffner,* 420 F2d 809 (CA 4, 1969).

*See, also,* Cramton & Holmes, *supra,* p 59.

[28] *See United States v Heffner, supra. See, also, Columbia Broadcasting System, Inc v United States,* 316 US 407, 416, 422; 62 S Ct 1194; 86 L Ed 1563 (1942).

Not every piece of paper emanating from an agency or department is a rule having the force of law. *Piccone v United States,* 186 US Ct Claims 752, 770–774; 407 F2d 866, 876–879 (1966) (concurring opinion (of Nichols, J.). Unpublished manuals and handbooks of so-called interpretive rules *(see* fn 15, *supra)* which seek merely to guide

The Attorney General states that "to the best of the appellee's knowledge, no state in the nation considers such specifications to be administrative rules and regulations or has promulgated said specifications as administrative rules and regulations". The Iowa State Highway Department, however, regards such specifications, including procedures for awarding additional compensation for changed physical conditions, as administrative rules and regulations requiring promulgation in conformity with Iowa's APA.[29]

The omission in the uniform and Michigan acts of a contract exception appears to have been deliberate and indicates that there is no general exception for law-implementing agency statements merely because they are in the form of standard contract provisions.

## C

All provisions of a governmental contract are not subject to the APA. APA requirements do not apply to contract provisions which are unrelated to the application or implementation of law enforced or administered by the agency or which do not prescribe agency practice and procedure.

Rules have the effect of law because they are legislatively authorized expressions by the agency in the exercise of delegated power to apply or implement the law. A contract or contract provision relating to a commodity manufactured and produced without regard to the needs of the

agency action are not of binding force. *See, for example, Brennan v Ace Hardware Corp,* 495 F2d 368, 376 (CA 8, 1974), and *United States v Lockyer,* 448 F2d 417 (CA 10, 1971); OAG, 1967–1968, No 4,614, p 225 (April 4, 1968). *See* exception (h) to the "rule" definition quoted in fn 25, *supra.*

[29] *See* Iowa Departmental Rules (July, 1975 Supp), Transportation Department, Highway Division, art G, ch 1, R 1.1(307A), p 141.

agency or concerning a housekeeping matter affecting only in a subsidiary or ancillary manner the discharge of the agency's primary function and the law it administers would not ordinarily have that quality.[30]

The standard contract provisions regarding claims for additional compensation for changed physical conditions provide a means of promptly resolving disputes with contractors which may otherwise impede timely completion of the work, and are closely related to implementation of the highway department's primary function of designing, producing, maintaining and operating highways and ancillary facilities.

The APA seeks to bring law and order to agencies in the exercise of delegated power to enforce and implement statutory law. There is no reason to suppose that the Legislature intended that an agency which can express policy of general applicability applying or implementing statutory law it enforces or administers or its practice or procedure through contracting, rather than formal rule making subject to the requirements and safeguards of the APA, should be able thereby to exempt itself from those requirements and safeguards.

The standard contract provisions regarding claims for additional compensation for changed physical conditions so closely relate to the primary function of the highway department that they are rules although incorporated as part of a contract.

The APA provisions subjecting to judicial review declaratory rulings regarding the application of an agency rule to an actual state of facts[31] cannot be

---

[30] See Bonfield, *The Iowa Administrative Procedures Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process*, 60 Iowa L Rev 731, 826–873 (1975).

[31] See fn 6, *supra*.

avoided by stating an agency's substantive policy or its procedure and practice in the form of a standard contract provision.

## D

While the APA provides that a rule is not valid unless promulgated in accordance with its notice and comment provisions,[32] that proscription merely bars an agency from attempting to enforce against a citizen a substantive or procedural expression, otherwise a rule, not so promulgated. It does not permit an agency to avoid altogether the operative effect of the APA by the simple expedient of ignoring the act and failing to promulgate such expressions in accordance with its provisions. The highway department's failure to promulgate expressions of agency policy, practice and procedure in accordance with the APA requirements does not preclude enforcement against the department.[33]

A holding of this Court that only those substantive and procedural expressions which the agency chooses to promulgate in conformity with the APA are rules would, contrary to the purpose and spirit of the APA, encourage agencies not to promulgate as rules statements of policy structuring and limiting the scope of agency discretion except insofar as the agency must do so because it seeks to limit the future conduct of the citizenry and, because of the nature of the agency's functions, such a prospective limitation cannot be expressed contractually.

The highway department promulgates its standard specifications with industry participation in a

---

[32] MCLA 24.243; MSA 3.560(143).

[33] Quite a different case is presented when an agency seeks to limit individual rights through the enforcement of unpublished rules not promulgated in accordance with the APA. See *Morton v Ruiz,* 415 US 199; 94 S Ct 1055; 39 L Ed 2d 270 (1974).

manner paralleling the APA requirements for rule
making. The Attorney General states:

"Because of changing circumstances, new methods
and materials and difficulties or disputes encountered
by the highway department and contractors in carrying
out previous projects, *the standard specifications are
periodically reviewed, updated and revised.* Such review
and revision is often accomplished by the appellee
highway department *in consultation with road building
and contractor associations and groups"* (emphasis sup-
plied).

The standard contract provisions were pub-
lished, although not in the Administrative Code.
See fn 17 and accompanying text, *supra.* The
relevant public has been made aware of the poli-
cies and procedures followed by the highway de-
partment in deciding claims for additional compen-
sation for changed physical conditions. See fn 11
and accompanying text, *supra.*

The rule making and declaratory ruling provi-
sions of the APA seek to provide public participa-
tion in policy formulation and external review of
administrative action to avoid discriminatory and
unreasonable enforcement. The act seeks to
achieve those goals by requiring agencies to articu-
late and publish in advance their policies and by
providing a measure of judicial review.

Some agencies have steadfastly resisted imple-
mentation of those legislative goals, and have
sought by one formulation or another to except
themselves from the act. Since many APA safe-
guards apply only to governmental decisions de-
nominated rules, agencies wishing to avoid the act
may fail formally to promulgate rules reflecting
policy decisions.

The highway department has not formally adopted and published in the Administrative Code any rules regarding the design, production, maintenance and operation of highways and ancillary facilities, or rules of procedure and practice.[34] It has been able to operate effectively without formal rule making, implementing its powers and functions in the administration of a budget of over three-quarters of a billion dollars a year, because it is able to effectuate so many of its essential policy decisions through contracting. If the department's claims are sustained then it will be effectively relieved of compliance with APA requirements in the exercise of the bulk of its law-implementing functions, and a precedent will be set for other agencies to emulate.

In construing legislation we seek to serve the legislative purpose. Carving out from the broad general definition of "rule" a judge-made exception for contracting and statements of governmental policy not duly promulgated in compliance with the APA will not serve the legislative purpose.

The Constitution provides that "[a]ll final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided

---

[34] The only rules formally promulgated by the department and published in the Administrative Code are those concerning classification and rating of bidders, 1975 AACS R 247.1–R 247.77; junk yards adjacent to highways, 1969 AACS R 247.101–R 247.109; critical bridge program, 1974 AACS R 247.151–R 247.156; traction devices, 1975 AACS R 247.171–R 247.175; driveways, banners and parades on and over highways, 1970–1971 AACS R 247.201–R 247.357; relocation assistance, 1974 AACS R 247.401–R 247.407; advertising adjacent to highways, 1974 AACS R 247.701–R 247.747.

*See* fn 12, *supra,* regarding rules of procedure and practice.

by law".[35] In denying Greenfield's claim the high-
way department effectively made a "final decision"
that Greenfield would not obtain administrative
relief before performing the contract. The disposi-
tion we would direct does not require that decision
be rested on the constitutional provision. We ad-
vert to it because it indicates that in providing for
judicial review of declaratory rulings the Legisla-
ture was responding to a concern expressed by the
people.

A "long line of Supreme Court decisions * * *
hold [sic] that an agency may not violate rules
which protect the interests of the protesting party
* * * ".[36] This is true of both procedural and
substantive rules.[37]

Federal courts have held that an agency is
bound by its policy declarations and practices not
formally adopted under the Federal APA. The
Court of Appeals for the Fourth Circuit reversed a
conviction of violation of a tax law because an IRS
agent failed to give the defendant warnings and
advice required by IRS "instructions", not pub-
lished in the Federal Register, circulated in a news
release and reprinted in the CCH reporting ser-
vice. *United States v Heffner,* 420 F2d 809, 812
(CA 4, 1969).

---

[35] This provision of the Constitution continues:

"This review shall include, as a minimum, the determination
whether such final decisions, findings, rulings and orders are autho-
rized by law; and, in cases in which a hearing is required, whether
the same are supported by competent, material and substantial
evidence on the whole record." Const 1963, art 6, § 28.

[36] Davis, Administrative Law Treatise, 1970 Supplement (1977 Cum
Supp), § 5.03-5, p 54. *See, also,* 1 Cooper, State Administrative Law, p
266.

[37] *See, for example, United States ex rel Accardi v Shaughnessy,*
347 US 260; 74 S Ct 499; 98 L Ed 681 (1954), and *Vitarelli v Seaton,*
359 US 535; 79 S Ct 968; 3 L Ed 2d 1012 (1959).

*See, also,* Note, *Violations by Agencies of Their Own Regulations,*
87 Harv L Rev 629 (1974).

In *Heffner* the Fourth Circuit concluded on the authority of decisions of the United States Supreme Court that it was "of no significance that the procedures or instructions which the IRS has established are more generous than the Constitution requires".[38] The court continued:

"Nor does it matter that these IRS instructions to Special Agents were not promulgated in something formally labeled a 'Regulation' or adopted with strict regard to the Administrative Procedure Act; the

---

[38] The court declared:

"An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down. This doctrine was announced in *United States ex rel Accardi v Shaughnessy,* 347 US 260; 74 S Ct 499; 98 L Ed 681 (1954). There, the Supreme Court vacated a deportation order of the Board of Immigration because the procedure leading to the order did not conform to the relevant regulations. The failure of the Board and of the Department of Justice to follow their own established procedures was held a violation of due process. The *Accardi* doctrine was subsequently applied by the Supreme Court in *Service v Dulles,* 354 US 363; 77 S Ct 1152; 1 L Ed 2d 1403 (1959), and *Vitarelli v Seaton,* 359 US 535; 79 S Ct 968; 3 L Ed 2d 1012 (1959), to vacate the discharges of government employees. See also *Yellin v United States,* 374 US 109; 83 S Ct 1828; 10 L Ed 2d 778 (1963). And the *Accardi* doctrine has been utilized by the courts of appeal. *E.g., United States ex rel Brooks v Clifford,* 409 F2d 700, 706 (CA 4), *reh den,* 412 F2d 1137 (CA 4, 1969); *Hammond v Lenfest,* 398 F2d 705, 715 (CA 2), *vacated on reh on other grounds,* 398 F2d 718 (CA 2, 1968); *Pacific Molasses Co v FTC,* 356 F2d 386, 389–390 (CA 5, 1966); *Sangamon Valley Television Corp v United States,* 106 US App DC 30; 269 F2d 221, 224–225 (1959).

"It is of no significance that the procedures or instructions which the IRS has established are more generous than the Constitution requires. In *Service v Dulles, supra,* the Supreme Court vitiated the discharge of a foreign service officer because of the State Department's failure to follow its own procedures. The Court concluded that it made no difference that the State Department had no statutory or constitutional obligation to establish the procedure in question:

"'While it is of course true that * * * the Secretary was not obligated to impose upon himself these more rigorous substantive and procedural standards, * * * having done so he could not, so long as the Regulations remained unchanged, proceed without regard to them.'

"354 US 388. See also *Vitarelli v Seaton, supra." United States v Heffner,* 420 F2d 809, 811–812 (CA 4 1970).

*[United States ex rel] Accardi [v Shaughnessy,* 347 US 260; 74 S Ct 499; 98 L Ed 681 (1954)] doctrine has a broader sweep. The Supreme Court in *Vitarelli v Seaton* [359 US 535; 79 S Ct 968; 3 L Ed 2d 1012 (1959)], applied it to a Department of the Interior 'Order.' The Second Circuit has applied it to the Army's 'Weekly Bulletin 42,' § 4(c) (Oct. 20, 1967). *Smith v Resor,* 406 F2d 141, 143–144 & fn 2, 146 (CA 2, 1969). The District of Columbia Circuit has applied the doctrine to a FCC *'rule'* which has not been formally promulgated but which the court found had been established by the FCC's 'usual practice' of including the rule in its orders. *Sangamon Valley Television Corp v United States,* 106 US App DC 30; 269 F2d 221, 224–225 & fnn 8 & 9 (1959). See also *McKay v Wahlenmaier,* [96 US App DC 313] 226 F2d 35, 43 (1955) (alternative holding)." *Id.* (emphasis supplied).

Similarly, see *United States v Leahey,* 434 F2d 7 (CA 1, 1970), and *United States v Sourapas,* 515 F2d 295 (CA 9, 1975).

It is accordingly of no importance that the highway department is not obliged to provide contractors claiming increased compensation for changed physical conditions an administrative remedy supplementing the common-law remedy.[39] Having done so, the department cannot avoid the APA procedural safeguards designed to protect against discriminatory and unreasonable administration.

Statements of substantive decisions of general applicability implemental of law enforced or administered by an agency or of its procedure and practice are, unless within a specific exception to the APA definition of the term "rule", binding on the agency although not promulgated in accordance with the requirements of the APA.[40]

---

[39] *See Hersey Gravel Co v State Highway Dept,* 305 Mich 333; 9 NW2d 567; 173 ALR 302 (1943); *W H Knapp Co v State Highway Dept,* 311 Mich 186; 18 NW2d 421 (1945).

[40] *See Sangamon Valley Television Corp v United States,* 106 US

II

Just as we look to the substance of the matter in deciding whether an agency statement is a rule, so too we look to substance in deciding whether an agency has issued a declaratory ruling regarding the application to an actual state of facts of an agency rule.

The Attorney General acknowledges that the highway department's letter of June 6, 1973 constituted "the department's final position". This "final position" was reached after consideration of Greenfield's claim by the central office adjustment bureau on appeal from the project engineer.

We have already stated our view that these standard contract provisions constitute a rule. The asserted disparity between the water levels in the plans and those found upon commencement of construction is an actual state of fact. The final position of the director/central office adjustment board is, despite the highway department's failure to obey the command of the APA to prescribe by rule the form for requesting and the procedure for submission, consideration and disposition of a request for a declaratory ruling,[41] in substance a declaratory ruling. The right to judicial review does not depend on the agency's compliance with

_____

App DC 30, 33–34; 269 F2d 221, 224–225 (1959); *McKay v Wahlenmaier,* 96 US App DC 313, 320–321; 226 F2d 35, 42–43 (1955); *Yellin v United States,* 374 US 109, 116–117; 83 S Ct 1828; 10 L Ed 2d 778 (1963).

[41] Agencies are required to prescribe by rule for declaratory rulings. *See* fn 6, *supra.*

The standard contract provisions invoked by Greenfield provide the manner of submitting a request for a declaration of the department's position, and for consideration and disposition of such a request.

Under § 64 of the APA, if a request for a ruling is denied, a declaratory judgment may be sought regarding the validity or applicability of a rule. MCLA 24.264; MSA 3.560(164).

In the instant case, the highway department did rule, albeit adversely to Greenfield's claim.

the APA or its labeling its decision a declaratory ruling.

The department's final position is, therefore, "subject to judicial review in the same manner as an agency final decision or order in a contested case".

The Court of Claims Act does not establish an "applicable special statutory *review* proceeding"[42] and therefore judicial review may be obtained in the circuit court.[43] The Court of Claims Act establishes a procedure for commencement and adjudication of *original actions* against the state. The Court of Claims, a statutory court of limited jurisdiction, has no power of judicial *review* of administrative action. Judicial review of administrative action may be obtained only in the circuit court, the Court of Appeals and this Court.[44]

---

[42] "Judicial review of a final decision or order in a contested case shall be by any applicable special statutory review proceeding in any court specified by statute and in accordance with the general court rules. In the absence or inadequacy thereof, judicial review shall be by a petition for review in accordance with sections 103 to 105." MCLA 24.302; MSA 3.560(202).

[43] "A petition for review shall be filed in the circuit court of the county where petitioner resides or has his principal place of business in this state, or in the circuit court for Ingham county." MCLA 24.303; MSA 3.560(203).

[44] Cramton & Holmes, *supra,* p 154:

"¶ 622. *The Reviewing Court*

"Review of agency action will be sought in the court specified by the governing statute for the particular agency. If the absence or inadequacy of the special statute requires the filing of a petition under the Act, the circuit court is the proper court.[33] Some specific statutory review proceedings are required to be brought in the Court of Appeals,[34] but by far the greater number of statutory proceedings are to be brought in the circuit court.[35]

---

"[33]MAPA § 103(1) [MCLA 24.303(1); MSA 3.560(203)(1)].

"[34]*See, e.g.,* [MCLA 338.219; MSA 14.629(19)]—revocation or suspension of license by Board of Dentistry; [MCLA 500.2068; MSA 24.12068] —revocation of insurer's license by Insurance Commissioner where rebates given; [MCLA 423.23; MSA 17.454(25)]—rulings or orders of Labor Mediation Board; [MCLA 418.861; MSA 17.237(861)]—decisions of Workmen's Compensation Appeal Board.

"[35]*See* 4 Honigman & Hawkins, Michigan Court Rules Annotated

In providing in the APA—applicable by its terms only to state agencies[45]—and in other enactments[46] for circuit court review of administrative decisions and rulings, the Legislature manifested an intention to supplement the provisions of the Court of Claims Act[47] which, to the extent of the APA and those enactments, necessarily is no longer exclusive.[48]

Since the right to judicial review of a declaratory ruling under the APA does not depend on the adequacy of alternative remedies, a contractor's right to proceed in the Court of Claims does not preclude exercise of the APA right to judicial review.[49]

We have not addressed the merits of the controversy, and intimate no view on whether Greenfield is entitled to additional compensation because of changed physical conditions.

We would remand to the circuit court for judicial review as a declaratory ruling the highway department's final position on Greenfield's claim.

---

[2d ed], pp 43–49, for a summary of review procedures in specific agency statutes."

[45] " 'Agency' means a state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute or agency action. It does not include an agency in the legislative and judicial branches of state government, the governor, an agency having direct governing control over an institution of higher education, or the state civil service commission." MCLA 24.203(2); MSA 3.560(103)(2).

[46] See MCLA 600.631; MSA 27A.631; GCR 1963, 706. See, also, Hawkins, Practice Commentary accompanying MCLA 600.631, 32 MCLA, pp 324 et seq.; 3 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Authors' Comments, pp 607 et seq.

[47] MCLA 600.6419; MSA 27A.6419; formerly 1948 CL 691.108.

[48] See discussion of MCLA 600.6419; MSA 27A.6419 in fn 55, infra.

[49] A comparison of § 63 with § 64 of the APA (MCLA 24.263, 24.264; MSA 3.560[163], 3.560[164]) makes this clear. Section 64, in contrast with § 63, requires a showing "that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff".

### III

Our colleagues and we are in agreement that the circuit court erred in asserting that it has general judicial power—apart from the review provisions of the APA and whether the standard contract provisions are a "rule" and the final position of the highway department is a "declaratory ruling"—to grant a declaratory judgment against a department of state government. The opinion signed by three of our colleagues predicates that conclusion on the doctrine that the sovereign state is immune from suit unless it consents to be sued and on a construction of the Court of Claims Act.

We conclude that the circuit court erred in rendering a declaratory judgment regarding Greenfield's claim against the highway department, not because of suit immunity, but because the Legislature has determined[50] that the circuit court is not the proper forum.

Since the Court of Claims Act provides that "the jurisdiction of the court of claims *as conferred upon it by this chapter* over claims and demands against the state or any of its departments, commissions, boards, institutions, arms or agencies, *shall be exclusive* [emphasis supplied]",[51] it is necessary, in determining whether the circuit court erred in rendering a declaratory judgment regarding Greenfield's claim against the highway department, to decide whether the Court of Claims is empowered to render a declaratory judgment. If it is not so empowered, then—unless we were to conclude that the Court of Claims has the "jurisdiction" but not the "power" to render a declara-

---

[50] *See* fn 2, *supra.*

[51] MCLA 600.6419; MSA 27A.6419; formerly 1948 CL 691.108.

tory judgment regarding a claim or demand against the state—nothing in the Court of Claims Act would preclude the circuit court from exercising jurisdiction and rendering such a declaratory judgment.

We turn to consideration of whether the Court of Claims is empowered to render a declaratory judgment.

## A

To be sure, as expressed in *Manion v State Highway Commissioner,* 303 Mich 1, 19; 5 NW2d 527 (1942), "[t]here is a distinction between sovereign immunity from *suit* and sovereign immunity from *liability*" (emphasis supplied).[52]

The common-law doctrine of sovereign immunity from *liability* has been effectively eliminated. In *Pittman v City of Taylor,* 398 Mich 41, 49; 247 NW2d 512 (1976), we held "that the traditional common-law judge-made immunity that the state and its instrumentalities heretofore enjoyed from its torts should be and it hereby is abrogated". This Court earlier ruled that "governmental immunity is not a defense to a claim against the State for contractual liability arising out of either governmental or proprietary operations". *Zynda v*

---

[52] The Court held that since the Court of Claims Act as originally enacted provided that it should not be construed "as enlarging the present liabilities of this State [1939 PA 135, § 24, amended 1943 PA 237, repealed 1945 PA 87]", conferral on the Court of Claims of jurisdiction to "hear and determine all claims and demands, liquidated and unliquidated, ex contractu or ex delicto, against the state [MCLA 600.6419; MSA 27A.6419; formerly 1948 CL 691.108]," did not subject the state to liability for personal injuries sustained in a collision between steamboats. "The State is not liable in this instance because of its sovereign immunity from liability in the performance of a governmental function and not because of its sovereign immunity from suit." *Manion v State Highway Commissioner,* 303 Mich 1, 21; 5 NW2d 527 (1942).

*Aeronautics Commission,* 372 Mich 285, 287; 125 NW2d 858 (1964).[53]

While the state's judge-made sovereign immunity from suit may, as held in *Manion,* "be waived without a waiver of" the state's judge-made sovereign immunity from liability, the judge-made immunity from suit cannot survive the abrogation of the judge-made immunity from liability for torts and contracts. Abrogation of the immunity from liability would be pointless if the immunity from suit were retained.

B

Be that as it may, and even if it were thought that there are vestiges of the judge-made immunity from suit still extant, the consent to suit in the Court of Claims extends to rendition of a declaratory judgment.

This Court declared in *Taylor v Auditor General,* 360 Mich 146, 150–151; 103 NW2d 769 (1960), that the Court of Claims "derives its powers only from the legislative act of its creation and does not possess the broad and inherent powers of a constitutional court of general jurisdiction", and concluded that the Court of Claims was without jurisdiction to grant a declaratory judgment. In so holding, this Court said that the declaratory judgment act[54] did "not authorize the rendition of declaratory judgments by any and all 'courts of record' " but only those which had both an equity and a law side of the court. Since the Court of

---

[53] *Zynda v Aeronautics Commission,* 372 Mich 285; 125 NW2d 858 (1964), was based upon earlier holdings of the Court involving highway department construction contracts. *Hersey Gravel Co v State Highway Dept, supra,* p 339; *W H Knapp Co v State Highway Dept, supra,* p 188.

[54] 1948 CL 691.501.

Claims did not have an "equity side" it could not render a declaratory judgment.[55]

The declaratory judgment act was repealed by the Revised Judicature Act,[56] and can no longer be regarded as expressing a legislative purpose to restrict the power to render declaratory judgments to only those courts which have both an "equity side" and a "law side".

The new court rules abolish "procedural distinctions between law and equity. [Citations omitted.] Under the new rules the action for declaratory judgment is simply filed on the civil docket; it is not filed on the law or equity side of the docket".[57]

---

[55] There is no need to question the continuing authority of *Hunt v State Highway Commissioner,* 350 Mich 309, 322; 86 NW2d 345 (1957).

In that case the Court held that in conferring on the highway commissioner the authority to contract, the Legislature had, "so far as concerns the subject matter of" a bill to enjoin condemnation proceedings and to secure specific performance of an agreement to purchase, taken from the state highway commissioner "the right of suit-immunity State officers normally enjoy" and had subjected him "to the injunctive process" and to a "decree adjudging the mutually binding effect of his contractual dealings". In so holding, the Court rejected the contention that the plaintiffs' remedy was "exclusively" in the Court of Claims.

In this connection it is noteworthy that the Court of Claims Act provides only that "the jurisdiction of the court of claims *as conferred upon it by this chapter* over claims and demands against the state or any of its departments, commissions, boards, institutions, arms or agencies, shall be exclusive". MCLA 600.6419; MSA 27A.6419; formerly 1948 CL 691.108. It thus appears that the exclusivity of the jurisdiction of the Court of Claims in terms applies only insofar as jurisdiction is conferred on that court. *Hunt*'s conclusion that the circuit court has jurisdiction to render an equitable decree against the state highway commissioner is thus entirely consistent with the conclusion in *Taylor v Auditor General,* 360 Mich 146; 103 NW2d 769 (1960), that the Court of Claims does not have equitable jurisdiction.

*See, also, Hill v State Highway Commission,* 382 Mich 398, 404; 170 NW2d 18 (1969) and *State Highway Commission v Tremarco Corp,* 37 Mich App 42, 47; 194 NW2d 468 (1971), where the property owners claimed that there had been an unconstitutional taking of property and the remedy provided in the Court of Claims was not adequate.

[56] MCLA 600.9901; MSA 27A.9901.

[57] 2 Honigman & Hawkins, *supra,* p 688.

The absence of an "equity side" in the Court of Claims no longer precludes it from rendering a declaratory judgment.

Nor does the Court of Claims Act evidence any purpose to deprive that court of the power to render a declaratory judgment. While it is a court of limited jurisdiction, its powers and jurisdiction subject to legislative control,[58] the act's generally worded statement that the court shall have "power and jurisdiction * * * [t]o hear and determine all claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state and any of its departments" does not exclude power and jurisdiction to render a declaratory judgment.

The subject matter of declaratory judgments is now covered by a court rule, which provides that "[i]n a case of actual controversy within its jurisdiction, any circuit court of this state may declare the rights and other legal relations of any interested party". GCR 1963, 521.1.

The Court of Claims Act provides that "[p]ractice and procedure in the court of claims shall be in accordance with the statutes and court rules prescribing the practice in the circuit courts of this state, except as herein otherwise provided. The supreme court shall have the power to make special rules for said court".

Statutory and court rule provisions authorizing the rendition of declaratory judgments are regarded as matters of practice and procedure and are not jurisdictional.[59]

---

[58] Const 1963, art 6, § 26.

[59] MCLA 600.6422; MSA 27A.6422.

The United States Supreme Court has held that the federal declaratory judgment act "is procedural only" and that in enacting that act Congress was exercising its power to control "practice and procedure". *Aetna Life Ins Co v Haworth*, 300 US 227, 240; 57 S Ct 461; 81

Pursuant to the statutorily conferred power to make special rules regarding the Court of Claims, this Court has promulgated rules for that court. Court of Claims Rule 4 provides that except as provided in the Court of Claims Act itself "[t]he practice and procedure of this court shall be in accordance with the rules prescribing the practice and procedure in the circuit courts of this state".

It therefore appears from both the Court of Claims Act and the special rules promulgated by this Court for that court that the General Court Rules apply to the Court of Claims as well as to the circuit courts. GCR 1963, 521, concerning declaratory judgments, applies to the Court of Claims.

It is not unusual to render, in the exercise of judicial discretion,[60] declaratory judgments regarding the constitutionality and construction of statutes in actions involving departments and agencies of state government.[61] There is often as much need to determine in advance of breach or performance of a governmental contract the rights and obligations of the parties as there is to make such a determination regarding a non-governmental contract or where there is no contract but enforcement of a statute is involved.[62] A declaration of

---

L Ed 617; 108 ALR 1000 (1937). "Congress enlarged the range of remedies available in the federal courts *but did not extend their jurisdiction." Skelly Oil Co v Phillips Petroleum Co,* 339 US 667, 671; 70 S Ct 876; 94 L Ed 1194 (1950).

State courts have made similar statements. *Knodell v Nelson,* 76 SD 43; 71 NW2d 737 (1955); *Lokey v Texas Methodist Foundation,* 468 SW2d 945 (Tex Civ App, 1971); *Murray v Cartmell,* 118 Vt 178; 102 A2d 853 (1954).

[60] *Molinaro v Driver,* 364 Mich 341, 354; 111 NW2d 50 (1961).

[61] *See Dukesherer Farms, Inc v Director of Dept of Agriculture,* 393 Mich 758; 223 NW2d 294 (1974); 9 Michigan Law & Practice, Declaratory Judgment, § 12, p 286; and 9 Callaghan's Michigan Pleading & Practice, § 69.12, p 561.

[62] After Greenfield's brief was filed in this case, the Court of

rights and obligations in advance of breach or performance does not enlarge the state's monetary exposure, it merely accelerates the determination of a "claim or demand ex contractu" to which the state has already submitted itself.

We would hold that the Court of Claims is empowered to render a declaratory judgment concerning a claim or demand against the state or one of its departments.

The Court of Claims, under its enabling act, has exclusive jurisdiction of an action asserting a claim or demand, ex contractu or ex delicto, against the state or one of its departments.[63] While an action for a declaratory judgment involving the state need not assert a claim or demand against it —and if it does not it may, subject to other provisions of law, be brought in the circuit court[64]—an action for a declaratory judgment asserting such a claim or demand is subject to the exclusive jurisdiction of the Court of Claims.

The judgment rendered by the circuit court declared that Greenfield is entitled to additional compensation, the amount to be determined in the Court of Claims. The judgment so rendered adjudicated a claim ex contractu against a department of state government and hence could only be entered by the Court of Claims.

We would affirm the decision of the Court of Appeals vacating the declaratory judgment rendered by the circuit court and remand to the

---

Appeals held that a circuit court has jurisdiction to render a declaratory judgment against the state highway department:

"While damage claims against the state must be brought in the Court of Claims, MCLA 600.6419; MSA 27A.6419, this action did not seek damages nor were any awarded." *Dorfman v State Highway Dept,* 66 Mich App 1, 3; 238 NW2d 395 (1975).

[63] MCLA 600.6419; MSA 27A.6419.

[64] *See* fn 61, *supra.*

circuit court for review, pursuant to the APA provisions regarding declaratory rulings, of the denial of Greenfield's claim.

KAVANAGH, C. J., concurred with LEVIN, J.

WILLIAMS, J. *(to reverse)*. This case concerns the Legislature's intention with respect to administrative and judicial protection of the affairs of citizens with state agencies.

Basically I agree with Justice LEVIN that the Legislature intended procedures to determine citizen rights described in the State Highway Department's standard construction contract specifications to be treated as rules under the Administrative Procedures Act (MCLA 24.201 *et seq.;* MSA 3.560[101] *et seq.),* entitling the citizen to specified due process, including a declaratory ruling and judicial review in the circuit court. I therefore can concur with parts I and II of his opinion and with his order remanding count I to the circuit court for further proceedings. As to count II, I would be forced to remand it to the highway department to give plaintiff a due process hearing on his request for extension of contract time, pointing out that as of record the plaintiff has not yet made any request upon the State Highway Department to acquire the necessary permit to remove the Army Corps of Engineers' Stop Order.

With respect to citizen suit against an agency of government for a declaratory judgment, I concur with my colleagues who hold that the circuit court has no jurisdiction. However, I disagree with my Brother LEVIN who would now hold that the Court of Claims has jurisdiction with respect to a declaratory judgment. I do so for essentially two reasons.

First, that issue has both legal and administra-

tive ramifications which deserve full adversary argument before us.

Second, my present belief is that the Legislature did not intend to remove immunity from suit in the nature of a declaratory judgment. This belief is premised upon the following four reasons. First, a declaratory judgment, as requested in this case, does not exactly fit the definition of Court of Claims jurisdiction for claims for compensation (although it can be argued the complaint is anticipatory of a claim). Second, and more importantly, the Legislature has specifically indicated in the Administrative Procedures Act how it intends such anticipatory action be handled; the act provides for due process review in the administrative agency, *i.e.,* the tribunal most intimately concerned with the given subject matter. Third, I believe the Legislature's intention would be evaded if an aggrieved citizen were entitled to bring original suit for declaratory judgment in the Court of Claims, thereby by-passing the applicable procedures under the Administrative Procedures Act, because if an aggrieved citizen were to exhaust the Administrative Procedures Act's procedures, his action would ultimately be reviewed *in the circuit court.* Fourth, on the one hand, the Legislature, in the Administrative Procedures Act, intended to provide fair and appropriate procedures within administrative agencies, requiring agencies to act fairly and professionally; on the other hand, the Legislature did not intend the courts to be bogged down with the details of administration except on final review. As is apparent from MCLA 24.306; MSA 3.560(206), which defines the scope of court review under the Administrative Procedures Act, the Legislature did not intend courts to review these matters *de novo* and make administrative

decisions on a preponderance of the evidence, which is what the Court of Claims would be doing if we held it had jurisdiction to hear declaratory judgment suits (especially where the administrative process had not been completed, as is the case here).

BLAIR MOODY, JR., J., took no part in the decision of this case.